STATE OF TENNESSEE ex rel. BETTY JEAN DILLEHAY,
Plaintiff in Error,

*v.*

LAWSON WHITE, Sheriff of Maury County, Tennessee,
Defendant in Error.

398 S.W.2d 737.

(*Nashville*, December Term, 1965.)

Opinion filed January 14, 1966.

CHARLES A. TROST, Columbia, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and WILLIAM
H. LASSITER, JR., Assistant Attorney General, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

The Circuit Judge dismissed this petition for the writ of habeas corpus after having considered the averments of the petition, the stipulation between the parties, and the record in the case of *"State of Tennessee v. Betty Jean Dillehay,* Criminal Court of Maury County, Tennessee, No. 7068."

Our consideration is limited to the law applicable to the facts as they were made to appear in the Circuit Court by stipulation, viz.:

(1) The petitioner is a poor and indigent person without funds or means with which to pay or secure the costs of this proceeding or the proceeding in the Criminal Court of Maury County, Tennessee, styled *State of Tennessee vs. Betty Jean Dillehay,* No. 7068;

(2) The petitioner is confined in the Maury County jail in the custody of the Sheriff of Maury County, under authority of a mittimus issued out of the Criminal Court of Maury County;

(3) The petitioner has served the ninety (90) days sentence and has worked off the $2.00 fine imposed upon her and is presently confined solely under that portion of the order of the Criminal Court ordering that she pay the costs in that proceeding, the same

being in the amount of $196.75, which amount includes $30.75 litigation tax.

On January 6, 1965, the petitioner was arrested on a warrant charging that she had neglected her child in violation of T.C.A. sec. 37-271, which provides that if any parent or guardian, or other person responsible in law for the care and support of a child be found guilty of neglecting such child, that such person shall be fined not more than $50.00, or imprisoned for not more than three months, or shall be punished by both such fine and imprisonment.

Being unable to make bond, she was confined in the Maury County Jail for a period of ninety-two days pending her trial on April 7, 1965. On that day she entered a plea of guilty to the charge and was sentenced to serve ninety days in the County Jail and to pay a fine in the amount of $2.00. She was given credit for the time spent in jail pending trial, a total of ninety-two days, but was returned to jail under a mittimus ordering that she pay, secure or work out the costs which had accrued in her case

* * * under that portion of the order of the Criminal Court ordering that she pay the costs in that proceeding [in which she entered a plea of guilty to child neglect], the same being in the amount of $196.75, which amount includes $30.75 litigation tax.

according to the stipulation and agreement of the parties, by which stipulation we are bound on the facts of this case.

The petitioner was indicted for child neglect on February 25, 1965, and first entered a plea of not guilty, but

on the date of her hearing she changed her plea to that of guilty and was sentenced as aforesaid.

No appeal was taken from the conviction, but immediately on the same day, that is April 7, 1965, the petition herein was filed alleging that the petitioner was illegally restrained by the Sheriff of Maury County by virtue of a mittimus issued out of the Criminal Court of Maury County.

In her petition she claims that she is being forced to stay imprisoned to work out the costs of the proceedings against her in violation of her rights to equal protection of the law under the Fourteenth Amendment to the Federal Constitution. The trial judge dismissed her petition, but allowed her to be released on her own recognizance pending the outcome of this appeal. She executed an appearance bond on April 10, 1965, which appears in the record, which bond recognizes that she is released on her

* * * own recognizance unless the said Betty Jean Dillehay does not leave Maury County, Tennessee, appear from term to term until the case is finally terminated or stricken from the docket and the defendant discharged by the court.

The State contends that the petitioner is not now being confined in jail and, consequently, her appeal on the denial of her petition is moot. With this reasoning we cannot agree. Although she is not being held in jail, she is, nevertheless, restricted in her liberty to Maury County pending this appeal and is subject to immediate confinement should her appeal be dismissed. By grace of the trial judge she is now at liberty, but upon her violation of her confinement to Maury County she could be

placed in jail again. Habeas corpus, if otherwise proper, can reach this constructive confinement. *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

The first question we consider on the merits. of this appeal is whether a person convicted of a misdemeanor can be confined in the workhouse to work out the costs incurred by the trial, if that person is found to be indigent, as it was stipulated the petitioner is in this case.

T.C.A. sec. 40-3203 provides that if the fine and costs, assessed by the court, are not paid, or secured, the defendant shall be imprisoned until the fine and costs are paid.

T.C.A. sec. 40-3204 provides that when the judgment of the court is that the defendant be imprisoned until the fine and costs, or the costs only, are paid, the defendant shall be committed to jail until the judgment is complied with, or the defendant discharged by due course of law.

In *Hamilton v. State,* 68 Tenn. 355 (1878), these Code sections were early construed. In that case it was held that a defendant who had given security under these sections, and was discharged from custody, could not be re-arrested when he failed to meet the obligations of the bond. In the recent case of *McInturff v. State,* 207 Tenn. 102, 338 S.W.2d 561 (1960), these sections were under consideration again and it was held that where a defendant in a liquor possession case had confessed judgment for a fine and costs and secured same with sureties, as provided for in T.C.A. sec. 40-3202, he could not then be re-arrested and confined to work out his fine and costs.

The provisions of this section (40-3202) are not applicable to the present case for the reason that the costs were not secured by petitioner herein. However, under

T.C.A. sec. 41-1234 it is provided that a prisoner confined to a workhouse in lieu of payment of fine and costs may be released if someone will secure them. This is, in essence, a workhouse bond, but in such a case if the prisoner and his sureties fail on the bond, he may be re-arrested and made to work out the remainder of his liability. *State ex rel. Siebers v. Cummings,* 208 Tenn. 612, 348 S.W.2d 292 (1961).

In *State for Use of Jackson County v. Stafford,* 183 Tenn. 186, 191 S.W.2d 442 (1946), it was held that where a cost bond had been made under T.C.A. sec. 41-1234, where a prisoner has once been re-confined to the workhouse to work out a fine and costs, and then released on his own recognizance, the State cannot sue him civilly on his cost bond, but must put him back in jail until he works out the costs. This is so because once the defendant is confined, his sureties and his bond are thereby released.

The prisoner's original confinement in this case was made pursuant to T.C.A. sec. 41-1219, which provides that where a defendant is imprisoned in the county jail for punishment or for failure to pay a fine and costs, or costs only, he shall be confined in the county workhouse until the expiration of his sentence by imprisonment and thereafter until the fine and costs, or costs only, as the case may be, have been worked out, paid or secured to be paid.

In *Thompson v. State ex rel. Burris,* 191 Tenn. 221, 232 S.W.2d 42 (1950), a city ordinance authorized committing a prisoner, who was convicted of violating a municipal law, to the workhouse to pay off a fine and costs. A workhouse bond was executed and it was held proper for the judge to have the prisoner re-arrested where his security on the workhouse bond failed. The line of cases

beginning with *Hamilton v. State,* supra, was distinguished in that they came under a State Code section and the city ordinance in this case was the authority for the confinement.

There is another distinguishing feature between the *Hamilton* type case and the *Thompson v. State ex rel. Burris* type case. In the former the security given was *not* a bond given to release a prisoner already committed to the workhouse (as in *Thompson*), but security given pursuant to a confession of judgment—a civil debt, according to *McInturff v. State,* supra.

At any rate, T.C.A. secs. 40-3203, 40-3204 authorize imprisonment in a situation such as in the instant case. Furthermore, the workhouse confinement is made also pursuant to T.C.A. sec. 41-1219.

Also, imprisonment for working out fine and costs in a misdemeanor case, as in the instant case, has been held not unconstitutional as imprisonment for debt. *Williams v. State,* 155 Tenn. 364, 293 S.W. 757 (1927); *Thompson v. State ex rel. Burris,* supra.

The costs in the instant case accrued prior to and up through the conviction of petitioner. It has been held that costs accruing *after* conviction—such as costs incurred because of a recapture after an escape from prison, or jail fees incurred after conviction—do not have to be worked out. *Knox County v. Fox,* 107 Tenn. 724, 65 S.W. 404 (1901); *Strong v. State ex rel. Barrett,* 129 Tenn. 472, 166 S.W. 967 (1914). The theory behind these holdings is that the costs accruing after conviction are a type of punishment and the confinement a deprivation of liberty which is meted out without giving defendant his constitutional right to trial and conviction only by due process.

Tennessee is not alone in authorizing imprisonment to work out fine and costs. Under the Illinois Criminal Code, it is proper to force a person convicted of a misdemeanor to work out a fine and costs if he cannot pay them. *People v. Allen, et al.*, 307 Ill.App. 241, 30 N.E.2d 116 (1940). In Washington the same is true, *Town of Ruston v. Wingard*, 58 Wash.2d 593, 364 P.2d 553 (1961). Also, in New York, *People ex rel. Sedotto v. Jackson*, 307 N.Y. 291, 121 N.E.2d 229 (1954). Sentence to hard labor for failure to pay costs is the unquestioned rule in Alabama—trial judges have very little discretion in the matter. *Crane v. State*, 33 Ala.App. 284, 32 So.2d 784 (1947).

Federal courts even countenance imprisonment to work out fines and costs. In the early case of *Ex parte Jackson*, 96 U.S. 727, 24 L.Ed. 877 (1877), it was held that a person could be imprisoned for failure to pay a fine; no issue of constitutionality was raised, however. It was later held proper in *Hill v. U. S. ex rel. Wampler*, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed 1283 (1936), the discretion of the judge being the only limitation:

Imprisonment does not follow automatically upon a showing of default in payment It follows, if at all, because the consequence has been prescribed in the imposition of the sentence. The choice of pains and penalties, when choice is committed to the discretion of the court, is part of the judicial function. 298 U.S. at 463, 464, 56 S.Ct. at 762, 80 L.Ed. at 1286.

On the question of whether petitioner's workhouse confinement is a denial of equal protection because one who could pay the costs would not have to serve time, authority is almost non-existent. In reason, however, it would seem that where costs are such that they are in-

532

curred by criminal defendants rich and poor alike, the indigent who is obliged in some way to satisfy these costs is not denied equal protection of the laws. It would, in fact, be a denial to the courts of their power to enforce judgments—an imposition on the integrity of the court —if one financially unable to pay is relieved of his obligation. The rich man would be the one deprived of equal protection if he had to pay and the indigent were set free. Our system of justice must always balance the interests of society as against the interests of the individual— specifically, in this case, the interests of the State is enforcing its judgments as against the interests of the indigent defendant. But equal protection of the laws has not been encroached upon here and the interests of the State cannot be disregarded. See Note, ''Equal Protection and The Indigent Defendant; Griffin and Its Progeny,'' 16 Stan.L.Rev. 394 (1964).

In considering this case we are confined to the facts appearing in the record and established at the hearing by the stipulation, etc., and the costs referred to in the stipulation are ''in the amount of $196.75, which amount includes $30.75 litigation tax.''

█ In regard to the litigation tax, the law is well established in this State that they are not a part of the fine or costs, within the statute authorizing confinement in the workhouse to work out fines and costs in cases, and a defendant cannot be made to work out such litigation taxes in jail. *Johnson v. State,* 85 Tenn. 325, 2 S.W. 802 (1887) ; *Ex parte: Griffin,* 88 Tenn. 547, 13 S.W. 75 (1890).

At one time in the history of Tennessee, an Act was passed by the Legislature to relieve convicted indigents of having to pay costs incurred in criminal cases by releasing them, on an oath of insolvency. Such provision

was made by Chapter 154 of the Public Acts of 1937, but two years thereafter it was repealed by Chapter 181 of the Public Acts of 1939.

We have given full consideration to the petition, the assignments of error, and argument advance in support of such assignments, and the reply brief thereto filed by the State. Upon consideration of the entire matter we find that the assignments are without merit. Affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.