**Betty Jean DILLEHAY**

v.

**Lawson WHITE, Sheriff of Maury County, Tennessee.**

Civ. No. 664.

United States District Court
M. D. Tennessee,
Columbia Division.

May 13, 1966.

Charles Trost, Columbia, Tenn., for petitioner.

Pride Tomlinson, Jr., Columbia, Tenn., for respondent.

## ORDER

FRANK GRAY, Jr., District Judge.

This case was heard March 25, 1966, upon return of a writ of habeas corpus. At the hearing, the parties stipulated that the statement of facts contained in the opinion of the Tennessee Supreme Court in State ex rel. Dillehay v. White, Tenn., 398 S.W.2d 737 (1966), together with a bill of costs which was introduced into evidence at the hearing, accurately set forth the facts of this case. These facts are as follows:

Petitioner was arrested January 6, 1965, on a warrant charging that she had neglected her child in violation of T.C.A. § 37–271, the maximum penalty for which is imprisonment for three months and a fine of fifty dollars. Being unable to make bond, she was confined in the Maury County jail for a period of ninety-two days pending a hearing on April 7, 1965. On that date she entered a plea of guilty and was sentenced to serve ninety days in jail and fined two dollars. The ninety-two days which she had spent in jail prior to the hearing were credited to her ninety-day sentence, but she was nevertheless returned to jail under a mittimus ordering that she pay, secure or work out the costs which had accrued in her case. These costs totaled $166, including jail fees in the amount of $141.50 which had accrued at the rate of $1.50 per day during the period that petitioner was incarcerated prior to her trial.[1] The petitioner was unable to pay or secure these costs; accordingly, she was imprisoned in the Maury County jail to work out the costs at the statutory rate of $2 per day.[2]

In Griffin v. People of State of Illinois, 351 U.S. 12 at 19, 76 S.Ct. 585 at

1. The bill of costs also states an amount of $30.75 for litigation tax. Litigation tax, however, is not a part of the costs within the meaning of the Tennessee statutes authorizing confinement to work out fines and costs and therefore the $30.-

75 in litigation tax imposed against the petitioner does not enter into the disposition of her petition for writ of habeas corpus.

2. T.C.A. § 41–1223.

590, 100 L.Ed. 891 (1956), Mr. Justice Black wrote, that "[i]n criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color" and that the Fourteenth Amendment protection against such invidious discrimination applies "at all stages of the proceedings." Although Mr. Justice Black's language was broader than the actual facts of the *Griffin* case required, much of the expanse of his dicta has been encompassed by subsequent holdings.[3] The applicability of the dicta to the practice of imprisoning indigents to work out criminal costs which wealthier misdemeanants are able to pay, however, remained an area entirely uncharted by judicial decision,[4] until Betty Jean Dillehay's habeas corpus petition was considered by the Tennessee courts. On its consideration of the question, the Tennessee Supreme Court concluded that imprisoning Betty Jean Dillehay to work out costs which she could not pay did not constitute invidious discrimination rendering her confinement unconstitutional. The court said:

"On the question of whether petitioner's workhouse confinement is a denial of equal protection because one who could pay the costs would not have to serve time, authority is almost non-existent. In reason, however, *it would seem that where costs are such that they are incurred by criminal defendants rich and poor alike,* the indigent who is obliged in some way to satisfy these costs is not denied equal protection of the laws. It would, in fact, be a denial to the courts of their power to enforce judgments—an imposition on the integrity of the court—if one financially unable to pay is relieved of his obligation. The rich man would be the one deprived of equal protection if he had to pay and the indigent were set free. Our system of justice must always balance the interests of society as against the interests of the individual—specifically, in this case, the interests of the State in enforcing its judgments as against the interests of the indigent defendant. But equal protection of the laws has not been encroached upon here and the interests of the State cannot be disregarded." (Emphasis added) 398 S.W.2d at page 740.

The decision of the Supreme Court of Tennessee was predicated upon the assumption that the costs for the nonpayment of which petitioner was placed in respondent's custody "are such that they are incurred by rich and poor alike." This assumption, however, is contrary to the facts of the case for the greatest portion of the costs which were incurred by petitioner, the $141.50 in jail fees which accrued at the rate of $1.50 per day while the petitioner awaited trial, would not have been incurred by petitioner had she been wealthy enough to make bail after her arrest.[5] Since the petitioner has already been confined for a period long enough to satisfy the other portions of the bill of costs,[6] the narrow question which this court must decide is whether a state, without trespassing

---

3. See Note, "Equal Protection and The Indigent Defendant; Griffin and Its Progeny," 16 Stan.L.Rev. 394 (1964).

4. The analogous area of workhouse confinement of indigents to work out fines has been explored in United States ex rel. Privitera v. Kross, 239 F.Supp. 118 (D.C.1965) and in People v. Collins, 47 Misc.2d 210, 261 N.Y.S.2d 970 (1965).

5. This important fact was not called to the attention of the Supreme Court of Tennessee, the factual stipulation before it showing merely the total amount of the costs and the part thereof constituting litigation tax.

6. Immediately after she was convicted, petitioner applied to the judge of the Circuit Court of Maury County for a writ of habeas corpus. The writ was denied, but the judge released the petitioner on her own recognizance pending an appeal of his decision to the Tennessee Supreme Court. The decision denying the writ was affirmed by the Tennessee Supreme Court January 14, 1966, and on January 21, 1966, the petitioner commenced working out her costs in the Maury County jail. She continued to work out these costs until March 25, 1966, when this court ordered her release on her own recognizance pending the decision herein.

upon rights secured to the individual by the Fourteenth Amendment, may imprison an individual to work out costs which she is unable to pay or secure and which would not have accrued but for her indigence.

 It is obvious that the practice [7] of confining in a workhouse those misdemeanants who are unable to pay costs which accrued because they could not make bail discriminates against the indigent. This practice not only results in the post-conviction evil of depriving an indigent of his liberty because of his indigence but also may be a factor precipitating his conviction. The fact that every day which an indigent spends in jail awaiting trial lengthens the sentence he will serve if he is ultimately convicted tends to operate coercively to induce the indigent to enter a guilty plea as soon after arrest as possible rather than to wait the several months it often takes to schedule a trial when a not guilty plea is entered. But although a state's practice may be discriminatory and substantially harm those who are the subject of the discrimination, the practice may be constitutionally permissible if it serves a sufficiently valid policy. Thus, for example, the requirement of bail pending trial discriminates substantially against the indigent defendant; nevertheless, the requirement is constitutionally permissible if bail is essential "to insure the defendant's appearance and submission to the judgment of the court." See Mr. Justice Douglas' opinion in chambers in Bandy v. United States, 82 S.Ct. 11, 7 L.Ed.2d 9 (1961). In the practice of charging an indigent jail fees and then imprisoning him to work out those fees, however, the State has only a revenue interest [8] which, in the court's opinion, cannot justify the discrimination occasioned by the practice. The interest of the State mentioned by the Supreme Court of Tennessee, that of insuring that judgments for costs are enforceable against the poor since they are enforceable against the rich, has no application to costs such as jail fees which do not accrue against the rich. The court is of the opinion, therefore, that Tennessee's practice of imprisoning indigent misdemeanants to work out jail fees which accrue during their pre-trial detention is unconstitutional.

Accordingly, the respondent is ordered to release the petitioner from further custody, that portion of the order of the Criminal Court of Maury County requiring that she work out her accrued costs being void insofar as it relates to $141.50 in jail fees.

---

7. An analysis of the statutory scheme upon which this practice is based appears in the opinion of the Tennessee Supreme Court in State ex rel. Dillehay v. White, supra.

8. Whether the State actually receives substantial revenue benefit from this practice would seem to be questionable.