# IN THE SUPREME COURT OF TENNESSEE
# AT KNOXVILLE
September 6, 2007 Session

## RANDY L. MAY v. HOWARD W. CARLTON, WARDEN

**Appeal by Permission from the Court of Criminal Appeals, Eastern Section
Circuit Court for Johnson County
No. 4781   Lynn W. Brown**

_____

### No. E2006-00308-SC-R11-HC - Filed January 18, 2008

_____

Incident to a conviction for first degree murder, the petitioner was declared infamous, a status which involves the loss of rights of citizenship, including the right to vote. At the time of the offense, homicide was not listed as an infamous crime under the statute. We granted permission to appeal to determine whether the judgment could be corrected through the writ of habeas corpus. Because the illegal disenfranchisement of the petitioner qualifies as a "restraint on liberty," a threshold requirement under our statute, we grant limited habeas corpus relief but uphold the underlying conviction and the term of incarceration. The opinion of the Court of Criminal Appeals is reversed, and the cause is remanded to the trial court for modification of the judgment.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Case Remanded to the Trial Court for Modification of the Judgment

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, JJ., joined. WILLIAM C. KOCH, JR., J., with whom CORNELIA A. CLARK, J., joins, dissenting.

Todd A. Shelton, Greeneville, Tennessee, for the appellant, Randy L. May.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Leslie E. Price, Assistant Attorney General for the appellee, State of Tennessee.

### OPINION

### I. Factual and Procedural Background

On January 24, 1981, the petitioner, Randy L. May, pled guilty to first degree murder and assault with intent to commit first degree murder. Pursuant to a plea agreement, the petitioner was ordered to serve two concurrent life sentences. As part of the judgment of conviction, the trial court declared the petitioner "infamous in Count One [first degree murder]."

Since his conviction, the petitioner has been incarcerated in the Northeast Correction Complex in Mountain City, Tennessee. In 2005, he filed a pro se petition for writ of habeas corpus seeking relief from the judgment on the ground that the legislature, at the time of the offenses, had not classified first degree murder as an infamous crime.

The trial court summarily dismissed the petition, holding that the conviction was not void and the sentence had not expired. Upon direct appeal, the order of dismissal was affirmed. While acknowledging that an erroneous pronouncement of infamy should be subject to correction, the Court of Criminal Appeals ruled that a statute enacted after the petitioner's conviction and which declared first degree murder to be an infamous crime could be applied retroactively.

In this appeal, the petitioner argues that he is entitled to habeas corpus relief from the erroneous judgment of infamy. Tenn. Code Ann. § 40-2712 (1980) (listing the crimes of infamy). He posits that the erroneous declaration of infamy has "worked to restrain [his] liberty to exercise [the] fundamental right" to vote, which is guaranteed by the Tennessee Constitution. See Tenn. Const. art. I, § 5 (stating the right of suffrage shall never be denied to any person entitled "except upon conviction by a jury of some infamous crime, previously ascertained and declared by law");[1] Tenn. Const. art. I, § 11 (prohibiting laws "made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal").

While conceding that the judgment is partly in error, the State argues that because the declaration of infamy is a "mere" collateral consequence of the judgment and does not restrain the petitioner of his liberty, he lacks standing to contest the erroneous designation of infamy. In the alternative, the State submits that even if the petitioner is entitled to relief, it should only be to the extent of vacating the illegal portion of the judgment and not the underlying conviction and sentence.

## II. Scope of Review

Whether to grant relief upon review of a petition for habeas corpus relief is a question of law. Smith v. Lewis, 202 S.W.3d 124, 127 (Tenn. 2006) (citing Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000)). Our review is, therefore, de novo with no presumption of correctness given to the findings and conclusions of the court below. Id. (citing Hogan v. Mills, 168 S.W.3d 753, 755 (Tenn. 2005)). "Because this is a habeas corpus proceeding, we are limited to considering the face of the judgment and the record of the proceedings upon which the judgment was rendered." Id. at 128.

## III. Habeas Corpus

Of common law origin and extending over hundreds of years, the "Great Writ" of habeas corpus is documented in American law by Article I, Section 9, Clause 2, of the United States Constitution: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in

---

[1] State law provides a procedure by which a person "rendered infamous" may seek restoration of their rights of citizenship, including the right to vote and hold public office. Tenn. Code Ann. § 40-29-101 to -205 (2006).

Cases of Rebellion or Invasion the public Safety may require it." Ex parte Bollman, 8 U.S. 75 (1807). By the passage of the Judiciary Act of 1789, Congress granted courts the statutory authority to issue the writ. Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 73, 81-82. Under the federal statutes governing the procedure, the power to grant the writ is limited. 28 U.S.C. § 2241(c) (Supp. 2006). To qualify for consideration of the merits of the claim, a federal prisoner must be "in custody." 28 U.S.C. § 2241(c)(1), (3). Similarly, federal courts have jurisdiction to grant habeas corpus relief when a prisoner is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a) (2000). The United States Supreme Court has interpreted this "statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490-91 (1989).[2] That interpretation has been extended to include consecutive sentences "in the aggregate, not as discrete segments." Garlotte v. Fordice, 515 U.S. 39, 47 (1995) (one serving consecutive state sentences is "in custody" and may make a habeas corpus attack on the first of the sentences, even after it has expired, until all sentences have been served).

For federal courts to exercise the power of habeas corpus over a state prisoner, the prisoner must have "exhausted the remedies available in the courts of the State" or have demonstrated that "there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(A)(B)(i). Under the federal interpretation, the "in custody" language as applied to an attack on state convictions does not always require physical confinement for consideration on the merits. For example, parole status has met the threshold requirement for habeas corpus relief. Jones v. Cunningham, 371 U.S. 236, 242-43 (1963). Further, in Carafas v. LaVallee, 391 U.S. 234, 239 (1968), the prisoner filed for habeas corpus relief before the expiration of his sentence but was released during the course of the appeal. The Supreme Court ruled that jurisdiction had attached at filing and permitted the action despite a claim of mootness by the government, ruling that the collateral consequences to the conviction, which precluded voting, holding public office, serving as juror, and other rights of citizenship, defeated the mootness defense.[3]

In this state, habeas corpus is guaranteed by article I, section 15 of the Tennessee Constitution: "[T]he privilege of the writ of Habeas Corpus shall not be suspended, unless when in

---

[2] Nevertheless, Maleng was deemed to be in constructive "custody," as in Peyton v. Rowe, 391 U.S. 54 (1968), and was permitted to proceed with his habeas corpus attack on a 1958 conviction because he was subject to a detainer under an unserved state conviction. Cf. Daniels v. United States, 532 U.S. 374 (2001); Lackawanna County Dist. Attorney v. Coss, 531 U.S. 923 (2000).

[3]
> It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these 'disabilities or burdens (which) may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' Fiswick v. United States, 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946). On account of these 'collateral consequences,' the case is not moot.

Carafas, 391 U.S. at 237-38 (footnotes omitted).

case of rebellion or invasion, the General Assembly shall declare the public safety requires it." Tenn. Const. art. I, § 15; Faulkner v. State, 226 S.W.3d 358, 361 (Tenn. 2007). Although our writ of habeas corpus is constitutionally guaranteed, it has been regulated by statute for almost one hundred fifty years. Code of Tennessee §§ 3720 to 3765 (Return J. Meigs & William F. Cooper eds., E.G. Easterman & Co. 1858); Faulkner, 226 S.W.3d at 361 (citing Ussery v. Avery, 432 S.W.2d 656, 657 (Tenn. 1968)). The statute broadly states that "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever, except in cases [in which federal courts have exclusive jurisdiction], may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint." Tenn. Code Ann. § 29-21-101 (2000).[4] The procedural requirements, as prescribed by statute, "are mandatory and must be followed scrupulously." Archer v. State, 851 S.W.2d 157, 165 (Tenn. 1993).

Although habeas corpus in this state receives constitutional and statutory guarantees, this Court has ruled that the writ may be granted "only when it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that a court lacked jurisdiction or authority to sentence a defendant or that the sentence has expired." Stephenson v. Carlton, 28 S.W.3d 910, 911 (Tenn. 2000). Stated differently, a petitioner must demonstrate that the judgment is "void" and not merely "voidable." Smith, 202 S.W.3d at 127 (citing Hogan, 168 S.W.3d at 755). An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time. State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978) (holding that even after a judgment becomes final, a trial judge has "the power and duty" to correct any illegality). Thus, when an illegality in the sentence is evident on the face of the record of the underlying proceeding, it is a nullity. Smith, 202 S.W.3d at 127.

## IV. Analysis

The petitioner contends that the declaration of infamy incident to his conviction of first degree murder was void because the trial court had no statutory authority to include that as a part of the judgment. In support of his claim, he asserts that at the time of the offense and his subsequent conviction and sentence, murder and assault with intent to commit murder were not listed as infamous crimes under Tennessee Code Annotated section 40-2712 (1980).

In 1980, the statute provided an exhaustive list of infamous crimes, including the following:

> abusing a female child, arson and felonious burning, bigamy, burglary, felonious breaking into a business house, outhouse other than a dwelling house, bribery, buggery, counterfeiting, violating any of the laws to suppress the same, forgery, incest, larceny, horse stealing, perjury, robbery, receiving stolen property, rape, sodomy, stealing bills of exchange or other valuable papers, subornation of perjury, and destroying a will.

---

[4] The most basic principle of statutory construction is to ascertain the natural and ordinary meaning of the language. See, e.g., Tuggle v. Allright Parking Sys., Inc., 922 S.W.2d 105, 107 (Tenn. 1996).

Id.

The terms of this legislation provided that upon conviction of any of these crimes, "it shall be part of the judgment of the court that the defendant be [declared] infamous," a status that precluded the right of suffrage. Id. As demonstrated, however, homicide was not a crime of infamy at the time the petitioner committed the offense. See Williams v. State, 520 S.W.2d 371, 376 (Tenn. Crim. App. 1974) (stating that homicide was not an infamous crime at that time). As a result, the trial court lacked statutory authority to declare the petitioner infamous. We must conclude, therefore, that the declaration of infamy was in direct contravention of the statute. See Smith, 202 S.W.3d at 128.

It is noteworthy that in the year following the petitioner's convictions, our legislature expanded the relevant statutory section to provide that any felony conviction would result in a declaration of infamy. See Gaskin v. Collins, 661 S.W.2d 865, 866 (Tenn. 1983). As a result, since May 18, 1981 (only four months after the petitioner's convictions), all felonies, regardless of severity, have qualified as "infamous crimes." Tenn. Code Ann. § 40-20-112 (1991). Although the legislature directed that this statute be applied retroactively, see Tenn. Code Ann. §§ 2-2-139(b), 2-19-143(4) (1981), this Court struck down that provision in 1983, holding that a retroactive disenfranchisement of voting rights violated article I, section 5 of the Tennessee Constitution. Gaskin, 661 S.W.2d at 867.[5] Thus, the 1981 amendment to the statute is not applicable to the petitioner and did not serve to cure the illegality of that component of the sentence.

While admitting that a restraint on one's liberty as used in Tennessee Code Annotated section 29-21-101 "encompasses situations beyond actual physical custody," the State argues that notwithstanding the illegality, the petitioner lacks standing and cannot be granted any relief unless there is some "restraint upon . . . freedom of action or movement." See State v. Hickman, 153 S.W.3d 16, 23 (Tenn. 2004). The State submits that the label of infamy appearing on the face of the judgment neither confines nor restrains the petitioner, and argues it is the perfectly valid sentence of life imprisonment that places the restraint on his freedom of action or movement. See id. The State concludes that "restraint of liberty" simply does not encompass voting rights, and that such a restriction is merely a "collateral consequence of the challenged judgment."

As stated, the essential purpose of a writ of habeas corpus is to subject imprisonment or any other restraint on liberty, for whatever cause, to judicial scrutiny. Faulkner, 226 S.W.3d at 361 (citing Peyton v. Rowe, 391 U.S. 54, 58 (1968)); see also Tenn. Code. Ann. § 29-21-101. We must

---

[5] Gaskin, who had fully served a sentence for manufacturing marijuana, challenged the propriety of the statute when his voter registration was revoked. On behalf of a unanimous court, Justice Frank Drowota wrote that

the 1870 constitutional convention was comprised of men who had known the injustice of retroactive disenfranchisement [during Reconstruction] and were determined to safeguard . . . future generations from similar acts of repression. That this right was preserved by constitutional amendment rather than legislative enactment accentuates its importance to the people of the State of Tennessee.

Gaskin, 661 S.W.2d at 868.

consider, therefore, whether an illegal disenfranchisement of the right to vote is the sort of wrong that the writ of habeas corpus was designed to correct. In Summers v. State, this Court explained the categories of restraints for which relief can be sought through the writ of habeas corpus:

> To obtain habeas corpus relief, a petitioner must be "imprisoned or restrained of liberty." "Imprisoned" refers to actual physical confinement or detention. "Restrained of liberty" is a broader term and encompasses situations beyond actual physical custody. However, a petitioner is not restrained of liberty unless the challenged judgment itself imposes a restraint on the petitioner's freedom of action or movement.

212 S.W.3d 251, 257 (Tenn. 2007) (citations omitted). Obviously, the petitioner is in prison for the very judgment under attack. Moreover, while the deprivation of the entitlement to vote does not fall under the definition of "imprisonment," the illegal component of the judgment, the declaration of infamy, qualifies as a restraint on his liberty and his freedom to act.

In Baker v. Carr, the United States Supreme Court observed that "[a] citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the [Federal] Constitution . . . ." 369 U.S. 186, 208 (1962). Our federal courts have described "the right to vote [a]s . . . a 'fundamental right'–indeed, the most fundamental right of all." Blumstein v. Ellington, 337 F. Supp. 323, 329 (M.D. Tenn. 1970). Early in Tennessee's judicial history, this Court determined that persons invested with the right to vote can be deprived only "by due process of law." State v. Staten, 46 Tenn. (6 Cold.) 233 (Tenn. 1869). Our Constitution guarantees its citizenry the right to vote pursuant to article I, section 5, protecting all except those convicted of infamous crimes.[6] That the entitlement is preserved in the Constitution rather than by legislative enactment underscores its importance to the people:

> The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction.

In this state, conviction of an infamous crime is absolutely essential to any denial of the fundamental right to vote. See also Gaskin, 661 S.W.2d at 866-67 (stating that voting rights can be denied only upon conviction of an infamous crime, previously ascertained and declared by law). Moreover, this Court has repeatedly observed that the phrase "restrained of liberty" includes any limitation placed on a person's freedom of action, including such restraints as conditions of "parole or probation." Benson v. State, 153 S.W.3d 27, 31 (Tenn. 2004); Dillehay v. White, 398 S.W.2d 737, 738 (1966) (holding that even though the petitioner was on bail, habeas corpus is permitted to test the legality of the restraint on liberty).

---

[6] In contrast, Amendment 15 to the United States Constitution makes no reference to disqualification by infamy.

Even though the federal statutes governing habeas corpus restrict the remedy to only those "in custody," imprisonment, as previously indicated, is not always a prerequisite for relief. Years ago, our nation's highest court confirmed the flexible nature of the writ. Wade v. Mayo, 334 U.S. 672, 681 (1948). More recently, the high court observed that "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient . . . to support the issuance of habeas corpus." Jones, 371 U.S. at 240. In Jones, the Supreme Court considered whether a Virginia prisoner, who had been paroled, was "in custody" within the federal habeas corpus statute and thus was entitled to invoke habeas corpus jurisdiction of the United States District Court. Id. at 243; see 28 U.S.C. § 2241. Due to the restrictions placed on his parole, the Court determined that the "Great Writ" could be invoked, allowed the petitioner to test the legality of the judgment, and framed the appropriate question to be whether the conditions "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." Id. at 242-43.

A "collateral consequence" of an illegality in a judgment is not always so significant as to warrant habeas corpus relief. Further, the petitioner, having committed egregious crimes and serving concurrent life sentences, is hardly a sympathetic figure. But as a matter of precedent applicable to all citizens, the writ should be available to those whose liberties are restrained by an illegality in a judgment. The right to vote, so precious to Tennesseans during the Reconstruction Era, qualifies today as a fundamental liberty in a representative government and, when illegally abridged, should be restored through the "Great Writ."[7]

Years ago, in State v. McCraw, 551 S.W.2d 692, 694 (Tenn. 1977), this Court specifically addressed the right to vote as a "restraint on liberty." McCraw was convicted of extortion in Tennessee and, after completing his sentence, moved to Georgia. When he was denied the right to vote in that state, he sought post-conviction relief here.[8] In construing the term "in custody," a prerequisite for relief eligibility under the Post-Conviction Procedure Act of 1967, this Court ruled that a prohibition on the right to vote so qualified, describing the prohibition, perhaps not by coincidence, as a "restraint on liberty." Id. As noted in Hickman, however, the term "in custody" is more broadly construed in the post-conviction context than either "imprisoned" or "restrained of

---

[7] Texas recognizes restraints beyond actual confinement. For example, in Tatum v. State, 846 S.W.2d 324 (Tex. Crim. App. 1993), the Texas high court confirmed that a void judgment may "have . . . collateral consequences in some future proceeding" and, if so, may be subject to habeas corpus attack even if the term has been served and the fine paid. Id. at 327; see also Ex parte Ormsby, 676 S.W.2d 130 (Tex. Crim. App. 1984); Ex parte Phelper, 433 S.W.2d 897 (Tex. Crim App. 1968); and Ex parte Jordan, 659 S.W.2d 827 (Tex. Crim. App. 1983). Denial of entry in the military and prohibitions against any opportunity to become a law officer have been deemed restraints on liberty in Texas subject to a petition for habeas corpus. Ex parte Davis, 748 S.W.2d 555 (1988); State v. Collazo, ___ S.W.3d ___, No. 01-06-01076-CR, 2007 WL 3227611 (Tex. Ct. App. Nov. 1, 2007).

[8] Today, the statute of limitations enacted in 1986 and reduced in length to one year in 1995, would preclude use of the Tennessee post-conviction procedure in these circumstances. Tenn. Code Ann. § 40-30-102(a) (2006). There is no statute of limitations in state habeas corpus.

liberty" under our habeas corpus statute. Hickman, 153 S.W.3d at 23 n.4. Despite the more restrictive interpretation of the threshold requirements for habeas corpus consideration, the holding in McCraw provides at least some perspective as to what collateral restraints beyond imprisonment might qualify for the remedy.

There should be no wrong under our law without redress. Bob v. State, 10 Tenn. (2 Yer.) 173, 176 (1826). When an illegality exists within the judgment itself, some procedural recourse should be available. While acknowledging the wrongful declaration of infamy in this case, the state has offered no relief. To date, our courts have not done so. To plead procedural bar, as the dissent suggests (in hopes of a magnanimous gesture through an untested process), offers no just conclusion. In Cummings v. State, 168 P.3d 1080, 1087 (N.M. 2007) (holding that habeas corpus may not be used to restore a prisoner's right to vote when the district court wrongfully informed the county court that the petitioner was a felon), the New Mexico Supreme Court rendered an opinion that is distinguishable from the circumstances at issue today. In that case, a clerical error, based upon a mistaken interpretation of a valid judgment, purged Cummings from the voter registration roll: "[S]ending his name to the voter registration section of the county clerk's office was erroneous." Id. at 1086. Here, the judgment of conviction included an illegality. Under similar circumstances, we have held that habeas corpus is the proper procedure for challenging an illegality in the judgment document. Moody v. State, 160 S.W.3d 512, 515 (Tenn. 2005) (judgment required registration of a sexual offender, despite the lack of statutory authority for the crime committed). This Court confirmed the principle that an illegality in a judgment may be corrected at any time. Id. at 516.

Habeas corpus has vitality in this state and, in our assessment, "is not a 'static, narrow, formalistic remedy,' but one which must retain the 'ability to cut through barriers of form and procedural mazes.' 'The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that . . . [in]justice[s] within its reach are surfaced and corrected.'" Hensley v. Mun. Court, 411 U.S. 345, 349-50 (1973) (quoting Jones, 371 U.S. at 243, and Harris v. Nelson, 394 U.S. 286, 291 (1969)). While not every collateral consequence qualifies as a restraint on liberty, we should not "suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." Id. at 350.

The petitioner is entitled to no remedy other than a correction of the judgment, thereby regaining, in his words, the "constitutionally-protected, fundamental right of suffrage as provided in Article I, Section 5 of the Tennessee Constitution." He should be granted relief from the declaration of infamy, but nothing more.[9] The conviction and term of incarceration remain intact. See Smith, 202 S.W.3d at 130 (stating that an original judgment of sentence was void on its face and warranted habeas corpus relief, but legality of conviction entered pursuant to guilty plea upheld); see also State v. Stephenson, 195 S.W.3d 574, 593 (Tenn. 2006) (stating that a first degree murder conviction "remained valid and in effect" even though habeas court on remand declared the accompanying sentence null and void).

---

[9] "A vote is like a rifle: its usefulness depends upon the character of the user." Theodore Roosevelt, An Autobiography 153 (BiblioBazaar 2007) (1910).

## V. Conclusion

Laws disenfranchising convicted felons are penal in nature. Retroactive application of the statute declaring all felonies infamous crimes is not permissible. See Gaskin, 661 S.W.2d at 867. Because the right to vote is fundamental to the concept of liberty in this state, an erroneous label of infamy in a judgment of conviction warrants remedy and should be declared null and void.[10] The petitioner is entitled to habeas corpus relief. We vacate the portion of the judgment labeling the petitioner infamous. The cause is remanded to the Johnson County Circuit Court for entry of a corrected judgment.

It appearing that the petitioner is indigent, the costs of this cause are taxed to the State of Tennessee.

_____
GARY R. WADE, JUSTICE

---

[10] In our view, the Court of Criminal Appeals incorrectly relied on prior cases to hold that "an erroneous pronouncement of infamy does not strike at the jurisdictional integrity of the sentence (life imprisonment) or the conviction (first degree murder)." May v. Carlton, E2006-00308-CCA-R3-HC, 2007 WL 241025, at *1 (Tenn. Crim. App. Jan. 29, 2007) (citing Humphreys v. State, 531 S.W.2d 127, 139 (Tenn. 1975); Williams v. State, 520 S.W.2d 371, 376 (Tenn. 1974) (perm. app. denied (Tenn. 1975)). In both Humphreys and Williams, the appeal process provided an opportunity for the modification of judgment. In this case, the petitioner pled guilty, no appeal was available, and no procedure other than habeas corpus was available to the petitioner to obtain relief from the illegality in the sentence.