IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 18, 2012 Session

## JOHN DOE v. MARK GWYN, DIRECTOR OF THE TENNESSEE BUREAU OF INVESTIGATION, ET AL.

Appeal from the Criminal Court for Sullivan County
No. C60,003    R. Jerry Beck, Judge

No. E2012-00497-CCA-R3-HC - Filed March 19, 2013

The petitioner, John Doe, filed a petition for habeas corpus relief in the Sullivan County Criminal Court to challenge his guilty-pleaded, 1995 attempted aggravated sexual battery conviction arising in that same court. Specifically, the petitioner, whose three-year sentence was suspended, challenged his conviction based upon sanctions imposed upon him by 2004 and 2007 changes to the sexual offender registration law. The habeas corpus court summarily dismissed the petition, and the petitioner appeals. We affirm the order of the habeas corpus court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Douglas A. Trant, Loretta G. Cravens, and Troy S. Weston, Knoxville, Tennessee, for the appellant, John Doe.

Robert E. Cooper, Jr., Attorney General and Reporter; and John H. Bledsoe, Assistant Attorney General, for the appellees, Mark Gwyn, Director of the Tennessee Bureau of Investigation, et al.

**OPINION**

The petitioner's 2011 petition for writ of habeas corpus focuses upon statutory changes that occurred after his 1995 guilty plea and conviction. Although he was required to register as a sexual offender when he was convicted in 1995, the petitioner claims that 2004 and 2007 changes in the registration law resulted in his being reclassified as a violent sexual offender for life. He claims that the reclassification removed his opportunity to be

removed from the registry after ten years following the expiration of his sentence and caused his name and photograph to be published. He first claims that these changes wrought by the legislature worked a breach of his plea contract with the State and that "[n]o subsequent law can impair the vested rights of a contract." The petitioner posits that, as a result of the State's action, the courts should specifically enforce his plea agreement. Secondly, he claims that the 2004 and 2007 changes in the law have effectively and illegally banished him from normal society. Finally, he maintains that these legislative changes violate his due process rights because the law is vague and overbroad and impermissibly entangles criminal sanctions with civil liberties. The State disagrees on all points and is particularly insistent that the petition is barred because the petitioner is not restrained of his liberty and because the claim is otherwise not justiciable in a habeas corpus proceeding.

"The determination of whether habeas corpus relief should be granted is a question of law." *Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007) (citing *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000)). Our review of the habeas corpus court's decision is, therefore, "de novo with no presumption of correctness afforded to the [habeas corpus] court." *Id.* (citing *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 408 (Tenn. 2006)).

The writ of habeas corpus is constitutionally guaranteed, *see* U.S. Const. art. 1, § 9, cl. 2; Tenn. Const. art. I, § 15, but has been regulated by statute for more than a century, *see Ussery v. Avery*, 432 S.W.2d 656, 657 (Tenn. 1968). Tennessee Code Annotated section 29-21-101 provides that "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever . . . may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint ." T.C.A. § 29-21-101. Despite the broad wording of the statute, a writ of habeas corpus may be granted only when the petitioner has established a lack of jurisdiction for the order of confinement or that he is otherwise entitled to immediate release because of the expiration of his sentence. *See Ussery*, 432 S.W.2d at 658; *State v. Galloway*, 45 Tenn. 326 (1868). The purpose of the state habeas corpus petition is to contest a void, not merely a voidable, judgment. *State ex rel. Newsom v. Henderson*, 424 S.W.2d 186, 189 (Tenn. 1968). A void conviction is one which strikes at the jurisdictional integrity of the trial court. *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993); *see State ex rel. Anglin v. Mitchell*, 575 S.W.2d 284, 287 (Tenn. 1979); *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

The requirement that the habeas corpus petitioner be imprisoned or restrained of his liberty is a threshold condition to relief. *Benson v. State*, 153 S.W.3d 27, 31 (Tenn. 2004) ("A statutory prerequisite for eligibility to seek habeas corpus relief is that the petitioner must be 'imprisoned or restrained of liberty' by the challenged convictions."); *James Mark Thornton v. State*, No. E2009-00399-CCA-R3-HC (Tenn. Crim. App.,

Knoxville, July 15, 2010). In the absence of the petitioner's imprisonment or other restraint on liberty, summary dismissal of the petition for writ of habeas corpus is appropriate.

Given the statutory hierarchy for approaching a habeas corpus analysis, we will first address the threshold question of whether the petitioner, who is not imprisoned, otherwise suffers a restraint on liberty. If a petitioner passes that threshold, we examine whether an imprisoned petitioner's sentence has expired or whether the underlying judgment is void.

## I. Restraint of Liberty

In the present case, the petitioner is not imprisoned; therefore, we address the requirement of Code section 29-21-101 that he must suffer a restraint of his liberty as a password for habeas corpus relief.

In claiming that the petition in the present case is barred because the petitioner suffers a restraint on his liberty, the State relies in part on *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010). In *Ward*, our supreme court determined that mandatory registration as a sexual offender was "a collateral consequence of the guilty plea." *Ward v. State*, 315 S.W.3d 461, 463-64 (Tenn. 2010). Because the registration requirement is "remedial and regulatory" rather than punitive, the court held that "the trial court was not required to advise the [guilty-pleading] defendant of the requirement of sex offender registration." *Id.*[1] "In addition," the court said, "the registration act, although perhaps inconvenient for Mr. Ward, has no effect on his range of punishment. We are joined in this view by a majority of the states in this country." *Id.* at 469.

*Ward*, however, does not control the present case. *Ward* was an appeal in a post-conviction proceeding, not in habeas corpus, and the utility in that case of discerning between collateral and direct consequences of a guilty plea was in adjudicating whether the accused, uninformed as to the consequence at issue, submitted a knowing and voluntary plea. Thus, the parlance of collateral and direct consequences of pleas is unrelated syntactically to whether a habeas corpus petitioner is restrained of his or her liberty. Our supreme court hinted as much in *May*, stating, "A 'collateral consequence' of an illegality in a judgment is not always so significant as to warrant habeas corpus relief." *May*, 245 S.W.3d at 347. Furthermore, in *Ward*, the supreme court cautioned that its ruling that the terms of the registration law applicable to Ward should not be read as approval of other, inapplicable

---

[1]The court further held, however, that "the trial court was required to advise the defendant of the mandatory sentence of lifetime community *supervision* because it is a punitive and direct consequence of the guilty plea." *Id.* (emphasis added).

restrictions expressed in the law, such as those that apply when the victim is a minor. *See Ward*, 315 S.W.3d at 472-73 (stating "nothing in this opinion precludes the possibility that an amendment to the registration act imposing further restrictions may be subject to review on the grounds that the additional requirements render the effect of the act punitive. Secondly, we reiterate that the restrictions imposed by Tennessee Code Annotated section 40-39-211(a) & (c), applicable only to offenders whose victim was a minor, are not at issue here because Mr. Ward's victim was not a minor") (footnote omitted). Thus, even though the collateral-direct consequence regime is not applicable in the present case, *Ward* did recognize that the restrictions placed upon a sexual offender whose victim was a minor have more impact than the standard restrictions on sexual offenders.[2]

"History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). "[A] person is not 'restrained of liberty' for purposes of the habeas corpus statute unless the challenged judgment itself imposes a restraint upon the petitioner's *freedom of action or movement*." *Hickman v. State*, 153 S.W.3d 16, 23 (Tenn. 2004) (emphasis added). In *State ex rel. Dillehay v. White*, 398 S.W.2d 737 (Tenn. 1966), our supreme court determined that the condition of an appearance bond that forbade the petitioner from traveling outside Maury County was a restraint on her liberty for purposes of pursuing a writ of habeas corpus. *State ex rel. Dillehay v. White*, 398 S.W.3d 737, 738 (Tenn. 1966).

Tennessee Code Annotated section 40-39-211, as noted in *Ward*, embodies provisions for regulating sexual offenders whose victims were minors that do not apply to other sexual offenders:

---

[2]The petitioner in the present case has not claimed that the retroactive application of the 2004 and 2007 amendments to the registration act violate principles of *ex post facto*. In *Ward*, the supreme court said,

> The registration act's language evinces a clear intent that the registration requirements be applied retroactively to *any* sexual offender. Consequently, the registration act, in its present form, is applicable to Mr. Ward rather than the version in effect when he entered his plea. Consequently, we apply and construe the registration act as currently written.

*Ward*, 315 S.W.3d at 468 (citation and footnote omitted). The court noted that "[t]he United States Supreme Court has upheld the retroactive application of Alaska's registration law against an ex post facto challenge." *Id.* n.6 (citing *Smith v. Doe*, 538 U.S. 84, 105-06 (2003)).

(a) While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, whose victim was a minor, shall knowingly establish a primary or secondary residence or any other living accommodation, knowingly obtain sexual offender treatment or attend a sexual offender treatment program or knowingly accept employment within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public.

. . . .

(c) While mandated to comply with the requirements of this part, no sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, whose victim was a minor, shall knowingly reside with a minor. Notwithstanding this subsection (c), the offender may reside with a minor if the offender is the parent of the minor, unless one (1) of the following conditions applies:

(1) The offender's parental rights have been or are in the process of being terminated as provided by law; or

(2) Any minor or adult child of the offender was a victim of a sexual offense or violent sexual offense committed by the offender.

T.C.A. § 40-39-211(a), (c). Also, Tennessee Code Annotated section 40-39-215 provides:

(a) While mandated to comply with the requirements of this chapter, it is an offense for a sexual offender, violent sexual offender or a violent juvenile sexual offender, as those terms are defined in § 40-39-202, whose victim was a minor, to knowingly:

(1) Pretend to be, dress as, impersonate or otherwise assume the identity of a real or fictional person or character or a member of a profession, vocation or occupation while in the

presence of a minor or with the intent to attract or entice a minor to be in the presence of the offender;

> (2) Engage in employment, a profession, occupation or vocation, regardless of whether compensation is received, that the offender knows or should know will cause the offender to be in direct and unsupervised contact with a minor;  or

> (3) Operate, whether authorized to do so or not, any vehicle or specific type of vehicle, including, but not limited to, an ice cream truck or emergency vehicle, for the purpose of attracting or enticing a minor to be in the presence of the offender.

T.C.A. § 40-39-215(a).

As can be seen, the restrictions relating to the present petitioner whose victim was a minor impose significant restraints on freedom of action and movement. They restrict the offender's location of a residence and choice of employment, particularly in an urban setting. They may adversely impinge upon an offender's decision to marry when the intended spouse is the parent of a minor child in residence. These restrictions apply during the offender's lifetime. If a restriction on extra-county travel in an appearance bond that by its nature is temporary is a restraint upon liberty for purposes of pursuing habeas corpus relief, we have no trouble discerning that the totality of restrictions placed upon a sexual offender whose victim was a minor qualifies as a restraint on liberty for such purposes, and we so hold.

## II. Expiration of Sentence; Void Judgment

Having determined that the petitioner is restrained of his liberty so as to pass the threshold to habeas corpus relief, we move on to the next level of eligibility determination – whether (a) an imprisoned petitioner is entitled to immediate release because his sentence has expired or (b) whether the judgment is void. The petitioner must show that he qualifies under one of these two rubrics. *See Ussery*, 432 S.W.2d at 658; *State v. Galloway*, 45 Tenn. 326 (1868).

### A. Immediate release from an expired sentence

The petitioner may not advance his claim for habeas corpus relief based upon expiration of his sentence because, although his three-year sentence expired long ago, he was

also released long ago. He is not imprisoned and may not be held accountable any further for the three-year sentence. Violation of the sexual offender registration provisions evoke new criminal sanctions, *see* T.C.A. §§ 40-39-211(f), (g); -213(b); -215(c), and not revocation of an expired, suspended sentence.

In reaching the conclusion that the petitioner's sentence has expired, we have not overlooked the question whether the enduring restraint on liberty, which we identified above, equates to an *extension* of the petitioner's sentence. We determine, however, that the restraint is not a "sentence" and that the petitioner's sentence expired with the passage of three years' service on probation. In making this determination, we note first that the habeas corpus statute, Code section 29-21-101, itself expresses a dichotomy between imprisonment and restraint on liberty: "Any person *imprisoned or restrained of liberty*, under any pretense whatsoever, except in cases specified in subsection (b) and in cases specified in § 29-21-102, may prosecute a writ of habeas corpus, to inquire into the cause of such *imprisonment and restraint*." T.C.A. § 29-21-101(a) (emphasis added). The usage imports a difference in meaning between imprisonment and restraint of liberty. Moreover, our supreme court has acknowledged that a restraint on liberty does not equate to a sentence. *See Hickman*, 153 S.W.3d at 24 ("Indeed, the ten-day sentence has long ago expired, *and the General Sessions judgment does not impose any further restraint upon* [*the petitioner's*] *physical movement or action*.") (emphasis added). In *May*, the court relied heavily on *Carafas v. La Vallee*, 391 U.S. 234 (1968), wherein the Court observed that some restraints on liberty "'survive[] the satisfaction of the sentence imposed.'" *Carafas v. La Vallee*, 391 U.S. at 237-38 (quoting *Fiswick v. United States*, 329 U.S. 211, 222 (1946)). Justice Koch noted in his dissent in *May* that the declaration of infamy, which the majority had determined to be a restraint on liberty for habeas corpus purposes, "*survives the expiration of the defendant's sentence* and remains in full force and effect." *May*, 245 S.W.3d at 354 (Koch, J., dissenting) (emphasis added). Indeed, the courts have viewed the expiration-of-sentence concept as being tied to a prison sentence. *See, e.g.*, *Faulkner*, 226 S.W.3d at 361 ("[T]he writ of habeas corpus may be granted only when the petitioner has established a lack of jurisdiction for the order of confinement or *is otherwise entitled to immediate release because of the expiration of his sentence*.") (emphasis added); *Jackie Joyce Brown v. Tim Guider, Sheriff*, No. 03C01-9310-CR-00346, slip op. at 3 (Tenn. Crim. App., Knoxville, Apr. 22, 1994) ("The writ of Habeas Corpus, codified at Tennessee Code Annotated [s]ection 29-21-101 to 130 is to be issued only in the case of a void judgment *or to free a prisoner held after the term of imprisonment has expired*.") (emphasis added). Accordingly, the applicable restraints imposed upon the petitioner by the sexual offender registration laws do not equate to an extension of his sentence.

## B. Relief from a void judgment

That said, the petitioner's only other avenue to a plenary review of his habeas corpus claims is that the conviction judgment resulting in the continuing restraint on his liberty is void. The petitioner, however, did not allege – and makes no claim on appeal – that the judgment is void. The judgment reflects that the trial court had jurisdiction to enter the conviction and sentence. The petitioner has pointed to no provision or omission in the judgment that would deprive the trial court of the power to convict and sentence him. We hold that the judgment is not void.

Consequently, the petitioner has failed to show that his claims are apt for habeas corpus relief, and the habeas corpus court did not err in summarily dismissing the petition.

## III. Availability of Remedy

In his brief, the petitioner argues that he should be availed a remedy to redress the injustice that he claims has been wrought upon him. As we have explained above, however, the writ of habeas corpus is limited in scope and has not been conceived as a bromide for any and all complaints about criminal convictions or sentences. Although The Great Writ has been judicially developed in ways that demonstrate flexibility of application, the writ has retained its prominence *qua* reverence – to the point of being galvanized into federal and state constitutional provisions – as a protection against abuses by the executive branch because, in part, it has not been subverted to an amorphous declaratory judgment form of action.

That said, the lack of a habeas corpus remedy does not mean that no legal avenue was ever available to address the petitioner's complaints. Apparently, the petitioner's concerns about the sexual offender registration arose via 2004 and 2007 amendments to the law despite that he may not have experienced consequential employment or social detriments until later. In Tennessee, post-conviction relief is available when a conviction judgment is void or voidable as a result of a constitutional deprivation. T.C.A. § 40-30-103. Our courts have used the post-conviction procedure to redress a denial of the right to counsel, in proper cases, by ordering "[s]pecific performance of a plea agreement [as] a constitutionally permissible remedy." *Goosby v. State,* 917 S.W.2d 700, 708 (Tenn. Crim. App. 1995) (citing *Santobello v. New York*, 404 U.S. 257 (1971); *Turner v. State*, 858 F.2d 1201, 1208 (6th Cir.1988)).

A plea bargain agreement may be scrutinized on appeal where enforcement of the agreement would deny the accused a

-8-

fundamental constitutional right or be unconscionable and not deserving of judicial approval. When the State later breaches a plea bargain agreement, the aggrieved defendant may either seek specific performance of the agreement or ask the court to restore both parties to the status they occupied immediately before the plea was entered. However, these principles apply only after the bargained guilty plea has been accepted by the Court.

*Harris v. State*, 875 S.W.2d 662, 666 (Tenn. 1994) (citations omitted). "When the state later breaches a plea bargain agreement, the aggrieved defendant may either seek specific performance of the agreement or ask the court to restore both parties to the status they occupied immediately before the plea was entered." *State v. Turner,* 713 S.W.2d 327, 329 (Tenn. Crim. App. 1986). "Where an agreement is accepted and breached, one of two results ordinarily follows, depending on the circumstances: (1) either specific performance of the agreement is directed, or, (2) the parties are restored to the status existing immediately before the plea was entered." *Metheny v. State,* 589 S.W.2d 943, 945 (Tenn. Crim. App. 1979).

Given this nuance of post-conviction law, perhaps the petitioner could have articulated a claim for specific performance of his plea agreement via a petition for post-conviction relief. We recognize that the statutory changes occurred well after the applicable post-conviction statute of limitations had expired. We also, recognize, however, that principles of due process may toll the post-conviction statute of limitations under appropriate circumstances. Our supreme court acknowledged that "under the circumstances of a particular case, application of the statute [of limitations] may not afford a reasonable opportunity to have the claimed issue heard and decided." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). To determine whether due process requires waiver of the statute of limitations in a particular case, a court must consider the governmental and private interests involved. *Id.* at 209. The supreme court clarified the *Burford* rule in *Sands v. State*, 903 S.W.2d 297 (Tenn. 1995). The rule from *Sands* and *Burford* is that "in certain circumstances, due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise after . . . the point at which the limitations period would normally have begun to run." *Sands*, 903 S.W.2d at 301. The court established a three-step process:

(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a

reasonable opportunity to present the claim.

*Id.* We also recognize, of course, that several years have now elapsed since the statutory amendments that aggrieve the petitioner were enacted. At any rate, a remedy that once may have existed does not amount to the absence of any remedy at all.

## IV. Conclusion

The petitioner has established that the restrictions of the sexual offender registry are a restraint on his liberty, but the petitioner cannot assert that he is imprisoned on an expired sentence and has not shown that the conviction judgment is void. Accordingly, he is not entitled to habeas corpus relief, and the summary order of dismissal of the petition is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE