Per Oueiam.
 

 In May term, 1817, a
 
 habeas corpus
 
 issued to John Mayfield, from a judge of the Circuit Court, to bring before him the body of Rebecca Renney, together with the cause of her caption and detainer. Mayfield brought her before the court as the .writ required, and returned as follows: “ That on the day on which the annexed bill of sale bears date, he received by delivery of the grantee thereof, possession of the said Rebecca Renney as his slave, and ever since has held her as
 
 such;
 
 that he paid a valuable consideration for said slave, as expressed in said bill of sale; that he holds said slave as his property, as he thinks he lawfully may; until by a solemn adjudication and trial by jury of the claim set up by said Rebecca to her freedom, the same is decided: May 24th, 1817.” The bill of exceptions states.an offer on the part of the plaintiff to prove her freedom by evidence, which the court rejected, and refused to set her at liberty, on the ground that an action of assault and battery is better calculated to try the right of freedom and slavery. And an appeal was taken from that opinion to this court.
 

 * It is said, perhaps (2 Bl. Rep. 1211; Cro. El. 821)? that the plaintiff may plead to the return, and that the court may take
 
 pro confesso
 
 the affidavit on which the
 
 habeas corpus
 
 is founded. But the law seems upon principle, as well as preponderance of authority, to be this. That if the return be legally sufficient, the court cannot try the faqts stated in it by affidavits, or other proof contradicting the return, but must for the
 
 *401
 
 present take it to be true. Nor can the court allow of pleading to the return, nor make an issue upon it. But after judgment for the plaintiff in an action for false return upon verdict, demurrer, default, or otherwise, then the court will issue an alias or pluries writ of
 
 habeas corpus.
 
 If any personal right, such as guardianship, be involved, the court will not determine it in this summary way. 2 Str. 982. See, 3 Ba. Ab. “Habeas Corpus,” B, § 13,the opinion of ten judges of England in answer to this question, put to them in Parliament in the year 1757. Five said the court were not in all cases bound by the return where they had undoubted proof of its falsity. The other five said the contrary, namely, that they were bound by the return though false, until the falsehood was evinced by verdict and judgment, or upon demurrer, or otherwise. As the others did not particularize how the falsity was to be ascertained, it is supposed that they also meant as their brothers did, by verdict and judgment in an action for a false return.
 

 Where a question of property depends on 'facts, how can the court decide it, upon affidavits, or proofs exhibited before the judge ? Is he a judge of matters of fact ? No: but only a judge of the law, where, the fact is ascertained to his hand. He might infer conclusions very different from those which a jury would draw upon the same evidence. It is a rule of the common law, that-aci
 
 questionem facti, respondent juratores: ad questionem
 
 juris,
 
 judices.
 
 So jealous is the Constitution of their privileges, that it actually forbids * judges to charge juries in matters of fact. Art. 5, § 5. After this shall judges usurp the power of juries, and in their stead determine upon facts themselves ? Or in other words say that the plaintiff on the-
 
 habeas corpus
 
 does not belong to the defendant, but is free ? As to making a plea to the return and taking issue upon it, that must depend upon precedent. We must not make the law
 
 de novo;
 
 and we are not furnished with any series of precedents to that effect. It is urged that the color of the plaintiff, she being of an olive complexion, with straight black hair and eyes, raises a presumption in her favor. These circumstances are not in the return. Shall the court, not regarding the return, proceed to this investigation ? If a presumption be raised, it is
 
 donee in contrarium probetur.
 
 And how is the contrary to be ascertained but by proof? We must reject this presumption in the beginning, or we must try all the facts
 
 *402
 
 on both sides instead of a jury. It is well remarked at the bar, that a
 
 habeas corpus
 
 may be made returnable before a0judge out of court, and in practice is often so returned. Shall he out of court, and unaided by counsel, let the presumption be raised and demolished by his own examination of the testimony? How is it to be collected, or the witnesses to be convened ? Are they bound to attend on his summons out of court ? Are
 
 ex parte
 
 affidavits to be taken, not under the cross-examination of the adverse party, and to be used as evidence ? The consequences are hideously frightful the nearer we approach to them. They are in jurisprudence the chaotic mountains of disorder. It is a part of our Constitution (ar-. tide 11, § 8), “ that no freeman shall be taken or imprisoned, or disseised of his freehold liberties or privileges, or outlawed or exiled, or in any manner- destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land.” What is the judgment of his peers or- the law of the land ? The verdict of a jury * or such procedure at law as is recognized in our code a proper and legal course of proceeding ; as by judgment upon demurrer, or by attachment for contempt of the court, and disobedience of such process and orders as are legally used for the' enforcement of justice and the execution of the law. In all matters of fact, then, where the common law requires an investigation by jury, we should proceed in that investigation ‘by a jury. And does the plaintiff suffer any inconvenience by that course? Not in the least degree. The law has provided her with divers means for the procurement of her liberty, if she be entitled to it. She may sue for a false return, upon that part of it which states that she is a slave ; and, upon obtaining a verdict and judgment in her favor, shall have an alias or a pluries
 
 habeas
 
 corpus, founded upon the record, and shall be discharged. Or she may bring trespass for assault and battery and false imprisonment, upon which the defendant will be obliged to plead,
 
 that she is a slave;
 
 and upon a verdict in her favor, or in case of default or demurrer, shall have judgment. If there be any danger of removal by the owner, a judge, upon a proper application by affidavit showing the danger, may order a sheriff to take and hold the plaintiff in his custody until the next term of the court, at which term the court will make such order for the safety of the plaintiff till judgment, as the case may require. The defendant, in such case, will not be allowed
 
 *403
 
 to intermeddle with the plaintiff, until after he shall have appeared and contested with the plaintiff, and put in issue the freedom of the plaintiff, and also shall have obtained the judgment of the court in his favor. The sheriff, under the direction of the court, as in case of attachment," shall keep the plaintiff in his custody until the defendant be compelled to plead and try the question whether free or not. If the plaintiff want testimony and can give security for returning to the master in case of a verdict against her, the court will order *that such security be taken, and that the plaintiff be permitted to go in search of testimony. And the court may, for the furtherance of a fair investigation, make all such reasonable
 
 rules
 
 and orders as are necessary to attain the purpose. These are the rules hitherto adopted and practiced by our courts, though not specially set down in any of our reports, except interspersed by and in parcels in different places. And we do not doubt that in some cases, as in the courts of Virginia, a bill in equity will lie for the same purposes. If the defendant evade the service of process by giving to another country, or by secreting himself, or by collusion with the sheriff or other officer, so that he cannot be taken, or in case some material parts of the evidence be in his knowledge, or any discovery be wanting, as to the places and persons to which he hath removed the plaintiff, the procedure may probably in such case be by bill. A subpoena left at his place of abode, or publication in the “ Gazette,” will be deemed good service. And after a verdict found in favor of the plaintiff, the court will give judgment. If the plaintiff be hired to a third person, and he be sued, and if notice be given to the owner of that suit, by any of the means by which a bill may be served on him, and that appear of record; if afterwards he will not appear and be made a defendant with or in place of the hirer, he will be bound by the judgment against the hirer. These are the provisions made by our practice for these unfortunate persons. They manifest the clemency of our laws towards them. The remedy is continually improved as emergencies present themselves, and are, with the improvements which the courts have power to engraft upon them by the general rules before mentioned, fully adequate to the protection of all such persons as may stand in need of their application to themselves. There is no call, therefore, for a departure from the ancient rules of law in cases of
 
 habeas corpus,
 
 one of our constitutional
 
 *404
 
 * remedies against unjust detention, very applicable and very effectual to the case of free persons acknowledged to be so, and
 
 illegally
 
 confined, but not applicable and effectual in cases where the plaintiffs are held as slaves; and for that reason hath been suspended in practice by remedies better adapted and more efficacious in their operation to the relief of plaintiffs.
 

 The applicant was correctly remanded by the Circuit Court to the custody of the defendant until a fair trial by jury could be had. Therefore, affirm the judgment of the Circuit Court.
 

 See Code, 3749, as to
 
 return.