Haywood, J.
The first question is, whether the evidence upon which the verdict was founded, warrants that verdict; and without detailing that evidence, it is the opinion of a majority of the court, that it is not sufficient: Therefore, of course, the sentence of death which is founded upon the verdict, is an unjust and illegal sentence, and ought not to stand, if by law there is any means provided by which it can be set aside and avoided.
The next question is, whether the law has provided any such means. The maxim of the law is, that there is no wrong without a remedy; and it is a particular rule, that a certiorari will lie to all inferior jurisdictions, (the proceedings of which cannot be corrected by writ of error,) to remove their proceedings into the superior court, to be there affirmed, or quashed, or otherwise corrected, as law and justice shall require. (Durham’s case, Sup. Ct. Knoxville, June term, 1814. 4 Hay. Rep. 1 Salk. Rep. 146, pl. 9—150, pl. 172. H. P. C. 287. It lies to all courts not proceeding according to the course of the common law, and where without the writ of certiorari, there would be no remedy against an illegal sentence; (1 Burr. Rep. 153, 154. 2 Bur. Rep. 682. 3 Bur. Rep. 1163, 1166, 1167;) which principle is recognized by the act of 1794, ch. 1, sec.1 , where the superior court is declared to have jurisdiction of all pleas of the government, and criminal matters, of what nature, degree or denomination whatsoever, whether brought before them by original or mesne process, or by certiorari, writ of error, &c.
By the act of 1809, ch. 45, sec. 4, the circuit courts within their respective circuits, shall have original jurisdiction over all criminal matters and causes, whereof the superior courts had jurisdiction; also, exclusive jurisdiction over all criminal matters. Of course, the circuit courts in this state have jurisdiction over all pleas of the government and criminal matters, of what nature, degree. *177 or denomination whatsoever, brought before them by cer-tiorari. If the matter stated in this petition be a plea of the government, or criminal matter, it is by the express words of these acts within the jurisdiction of the circuit court, or may be brought before it by certiorari. What are the criminal matters which can be brought before the circuit court by certiorari? The answer is, all such criminal matters as by common and statute law, could be brought before the court of King’s Bench in England. For by the act of 1794, the Judges have the same power as former Judges of the high court; and before, by 1777, ch. 2, sec. 1, the Judges of the high.court thereby established, had the same powers as any former Judges; and by the last act before that, in the lime of the royal government, the Judges of the high court had the same powers as the Judges of the King’s Bench. So here, our circuit judges, at present, have the same powers, except so far as they are restricted by the constitution or laws of this state. This is a criminal matter which could be brought before the judges of the King’s Bench by certiorari', because, to a court which proceeds by rules other than those which the common law prescribes, a writ of error will not lie for reversing its proceedings, and the same must therefore be done by certiorari. And in all conscience and justice, is not this in itself right and proper? Shall it be said that a human being shall be condemned to death by a wrongful sentence, and that there is no power residing in the law to rescue him from it? Does the law delight in cruelty? Will it inflict punishment where it is not deserved? Will it give no power to avoid the unjust sentence? Then where is the justice of the law, and where is its boasted humanity? And for what good end and purpose is it, that the arm of the law should be lengthened to strike the fatal blow, hut made too short to save an unfortunate victim who is unjustly doomed to.suffer? It is enough to ask the question, and every heart will respond that it should not be so. And if it should not be so, can it be conceived that the law has said that it shall? After so many ages of experience and of improvement, has no provision ■ been made *178 to obviate an evil so distressing to humanity? As one of its servants, and to vindicate the title of the law to the esteem and reverence of mankind, I say that it has made ample provision, and given a plain and easy mode. It has given the certiorari, upon which the Judge of the circuit Court shall give redress, either by quashing the proceedings, or by granting a new trial; by ordering him to be again tried before the magistrates, or if justice require it, may order it before himself in the circuit court; or may quash the proceedings entirely.
A third question is, whether this is such a case in which the Judge ought to have granted a certiorari: if the evidence and proceedings stated in the petition, and verified by affidavit, showed that the verdict was questionable, or probably wrong, or that the trial by another court and jury, after discharging the first because they could not agree, might probably be an illegal trial, then it should have been granted, to have the causes of complaint against the proceedings deliberately enquired into, and the law relative to them carefully ascertained; and the whole set down upon the records of the circuit court, that they might be subject to revision by this court. The cer-tiorari could not be refused with propriety upon the ground that it was not a proper writ for such a case, but only, because the evidence showed that the verdict was supported by it; and upon the further ground that the second trial was a legal one. If the circuit court, in refusing the certiorari, went upon the ground that the writ was not grantable in such a case, it committed an error; and if it went upon the ground that the verdict was too well supported to be questionable, that also was a mistake, for at least the correctness of it ought to be considered; or if the circuit court went upon the ground that the second trial was clearly legal and correct, that also was a mistake; for it is not clearly so, but liable to doubt enough to call fora solemn judgment.
The next question is, whether the refusal of a certiorari by the circuit court, when it ought to have been granted, is such an error or mistake, as can be rectified by the in *179 terference of this court. The subject is discussed in Peck’s Reports, 337, 338; and the opinion thereupon given, is, in my judgment, a correct one.
The act of 1811, ch. 72, sec. 11, says, speaking of writs of error to this court, that any party in 'any suit, who shall be dissatisfied with the judgment of the circuit court, or shall be of opinion that there was error in the record of the proceedings in any such suit, may have his appeal in the nature of a writ of error &c. Is. the petition to the circuit court for a certiorari, a suit or application for justice? Is the petition with the appendant papers filed of record in that court, with fthe entry on the record book of its presentation to the court, and of the refusal by the court to grant the prayer thereof, the record of the proceedings in that cause? And does the rejected petitioner show his opinion to be that there is error therein? If so, then this is the precise case mentioned in^the act. Patton, the party to the petition, states, that in the record of the proceedings there filed of record, and in the record brought, there is error, and he has prayed his appeal in the nature of a writ of error. If the case is within the very words of the act, why not also within its operation? If it be said, that there is technically speaking no record of the proceedings; the answer is, that the petition with all the appendant documents are filed of record; and that the history of its progress and end, is put on the record book. Why is it not a record as much as a certio-rari applied for in case oí a forcible entry, or for a road? If this be not record enough, then in any case of a cer-tiorari applied for and refused, however flagrant and illegal the refusal, the injured party is without redress, for, by law a writ of error can never come into this court to show the injustice he has suffered: who can believe that this is so? The writ of error will not lie, it is said, because the judge has discretion to grant the certio-rari or not; but what sort of a discretion. Not an arbri-tary one, to do as he pleases; but to discover by the right rule of law what is right, and so do that. If he does *180 otherwise, his unrighteous discretion shall be purified and made toagree with his duties and lhe rightsof the ap-pficanl. It is so in the case of a court granting or refusing a mandamus; or the case of granting or refusing' a continuance; why not in refusing a certiorari to save the life of a man unjustly sentenced to death? Is it because by the spirit of our laws, the life of a man is of less estimation, than the matter involved in the suit where the new trial is moved for, which may be only some small value of property? If it be said that such petition ought not tobe entered of record, the answer is, that any thing ought to be entered of record, which may be the subject of future revision in this court. Where is the law which says, that it shall not? And where is the reason that induces the law to say so? If it be better the errors shall be arrested, than to remain unarrested, the law has no motive for saying so, and will not say so, and does not say so. But if it is better to screen errors from examination and correction, then no doubt the rule is conformable to the objects of the law, for then they can never appear, and can never be reversed. But the law has no such object, nor has it established any such rule, that the unjust refusal of a certiorari shall not appear of record.
Without going further at present, my opinion is, that the circuit court should grant the certiorari, and should decide upon it, the points made in the petition for the judgment of the court, and should make that decision to appear fully on record, and that if that court should think proper to order a new trial, that it may direct such trial to be in such place or court where it can most properly be tried, or may order it to be tried before the circuit court itself, and that a mandatory order to this effect should be transmitted from this court to the judge of the circuit court.
When it is said the evidence is not sufficient, the meaning is hot that the court can decide upon the inferences to be drawn from evidence, for that belongs toa jury; but that it is of such a doubtful character as to induce suspi» *181 cion, that the3 verdict may not be correct and proper, and that for this reason, the opinion of another jury should be taken upon the evidence before the verdict should be finally established. The rule is, that if there is reason to doubt of the propriety of a verdict, the evidence should be reconsidered by another jury.
Peck, Judge.
The questions which arise in this cause, having grown out of proceedings of a court of special and limited jurisdiction, it becomes our duty to inquire, 1st, Whether there exists any controlling power in other, and what tribunals. 2d, If any, how that controlling power should be exercised. .And 3d, Is this a proper case for the exercising of that controlling power.
In the outset, I beg leave to premise, that I entirely concur in the opinion of Judge Haywood, and will in addition, give the reasons which have brought my mind to that conclusion. The court, whose judgment we are about examining, is not only one of serious consequence to the class of persons subject to its jurisdiction, but is of the utmost importance to those who may be the owners of slave property in this country, and it is for us now to consider, if such tribunal be ábove control.
The act principally to be considered, is that of 1819, ch. 35; and is the act under which this proceeding has taken place. This act has made,some alteration in the previous laws providing for the trial of slaves, on charges of a capital nature; and so far as it goes, gives rights to the slave, which, before the passage of tais law, he had not. The sheriff shall summon three justices to preside on the trial, and twelve housekeepers, being owners of slaves, to serve as a jury on the trial; and should the jury find such slave guilty of the offence charged, the said justices shall proceed to judgment. This judgment reaches the life of the person charged. It takes the property of a citizen to satisfy that judgment. No appeal is given to any other tribunal in express words; but from the nature of the important duties to be performed, the want of legal information in those to perform it, it is not very prob *182 able that in every case, on a capital charge, three justices summoned by the sheriff, should correctly administer the jaw. Should error intervene to the prejudice of the person tried, and there be no remedy after judgment, the injury is two fold — a barbarous example of the execution of a human being, mocked on his trial, by perhaps the introduction of illegal evidence; his triers, at intervals, mixing with the crowd, or perhaps, some of the thousand accidental errors that are daily committed by higher courts, to whom belongs the administration of this branch of the law. We are far from thinking that it could be possible, that any voluntary abuse of power could have been exercised by the court or jury who sat on this trial; all that is intended by these remarks is, that from the nature of the duties of justices, it could not be ¡ expected, that on a branch of law, not within their ordinary sphere, they should be found even more correct, than experienced judges; and all agree that it is the misfortune of those sometimes to err in like trials. Whether or no we have the right to inquire into and control such errors, is the question.
By the act of 1777, ch. 2, sec. 2, in North Carolina, reenacted by 1794, in this State, ch. 1, sec. 1, the jurisdiction of the old superior court shall extend to all pleas of the government and criminal matters, of what nature, degree or denomination soever, whether brought before them by original or mesne process, or by certiorari, writ of error, or appeal from any inferior court, or by any other way or means whatsoever. At the establishment of our court law, in 1809, the jurisdiction which belonged to the old superior court, was given to the circuit courts.
The language of the fourth section of ch. 49 of the act of 1809, is abundantly full to give every power to the. circuit courts, so that connecting the language of the two acts, touching jurisdiction, it would be impossible to conceive of a case that might arise to the injury of any person, which could not be redressed by the power put in the superintending hand of the circuit court.
In the removal of officers by inferior jurisdictions,, *183 punishment for contempts, unreasonable exercise of authority in laying out roads, assessments and levying taxes, proceedings by corporations, regulations under the poor laws, and many other instances might be put, to show the necessity of such a controlling power; and that in fact, in all the aboye enumerated cases, it has been extended, by means of some appropriate writ, furnished either by the constitution, some statute, or by the common law. And can it be pretended, that all this power exists in the hands of superior .tribunals, concerning light and trivia] matters, and that in a case touching the life of a human being, and the destroying that life, affecting the interest of a fellow citizen, is, because of the peculiar jurisdiction for the trial of slaves, beyond control. Two instances, where the circuit court has controlled the convictions of slaves by such tribunal, are within the knowledge of the court and bar; and all must say, that on a proper case made out, the circuit court is bound to interfere.
X come now to the second point to be considered, how the power existing in the circuit court, shall be exercised? •In England there is no question the certiorari would lie in such a case, either before or after judgment. Before judgment, on a case made out, that because of the public clamor, justice could not, in all likelihood be done the person charged in the county where charged; after judgment, for irregularity in the proceedings. In this country, the writ of certiorari has been used in like cases, has been a favorite writ with our courts, before and since the revolution. The disputes that have arisen in our courts, concerning the use of this writ, was not as to its application to criminal cases. The doubt arose concerning its application to civil cases; which doubt was finally put to rest by sec. 6 and 7 of art. 5, of our consli-rution. In England there is a power at hand to form writs suited to every exigency; and in this country, that power exists in the circuit court.
It would seem strange, that while that power exists in civil proceedings, to the fullest possible extent, that any *184 should deny it in criminal proceedings. Color,, rank o situation can make no difference; even the slave has such rights as the statutes of the country has afforded him. The exercise of these rights rests with the courts according to the exigency. And say for argument sake, he cannot speak himself, the law has given to the master the right to speak for him. His plea, when presented must he heard; and if he save his beast of the plough from being sacrificed by the sheriff under an unjust judgment, by suing forth the writ demanded in this case, is it less reasonable that his more valuable property, the life of his slave, should be jeopardized or taken away, because on a proper application made, in a case proper for revision, the remedy had beeu denied, where it should have been granted. The application was to the circuit court for the certiorari, the proper writ in such a case. It was sued for in the only way it could have been. The proceedings were before a court not of record; therefore,all the proceedings being in contemplation of law, ore tenur, whatever was erroneous in the proceedings, could only be shown by petition and affidavit. In this way the* whole case was presented to the circuit court, not cm a writ of certiorari, but on an application for that writ. Had the circuit court viewed the whole case before him on this application, he would not have tantalized the owner of the slave, or the slave himself, in such an extremity by an insincere show of judicial mockery; the supposition is impossible. I humbly conceive he would not have trifled in judgment, and then sent such, his trifling, before us for revision. He did act on the application, and exercised his best judgment; and knowing, as he did, that this court was open to consider of all his acts, when presented to us, he has, in the only way he could considering the judgment he gave, sent the proceedings just as they were presented to him, for our judgmeut.
The cause being well before us on the writ of error sent: up, it becomes our duty to enquire, 3d, and lastly, Is this a proper case for the exercise ofa controlling power? In other words, should the circuit court in the exercise of a *185 sound legal discretion have' ordered the certiorari? Three of this court are of opinion he should; not only on the facts of this case, but the alleged error in the proceedings, required in the exercise of a sound legal discretion, that he should have granted the certiorari, and have judged of the case. Discretion must not be arbitrary; discretion depends upon the rules of law, and should be so exercised that the administration of law, should be uniform and alike to all. Discretion, when exercised by inferior, has always in this country, been subject to the control of superior jurisdictions. If discretion were arbitrary, it would be so in the hands of all tribunals, and without control, could be applied to the worst of purposes. To control the exercise of this legal discretion, being illegally exercised in the denial of the writ which should have been granted, this cause is brought before us. Thinking that error has been introduced in refusing the certiorari, the judgment refusing the writ must be reversed. Being bound by law, to give such judgment as the circuit court should have given, and having all the lights before us the circuit court had; believing the case fully before us, three judges of this court do order that the circuit court grant the writ oí certiorari; and by such writ, the cause being brought before him, proceed to give such judgment on the case, as in his opinion ought to be done.
Whyte, Judge, concurred.