IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 6, 2007 Session


**RANDY L. MAY v. HOWARD W. CARLTON**


**Appeal by Permission from the Court of Criminal Appeals, Eastern Section**
**Circuit Court for Johnson County**
**No. 4781    Lynn W. Brown, Judge**

---

**No. E2006-00308-SC-R11-HC - Filed January 18, 2008**

---

WILLIAM C. KOCH, JR., J., with whom CORNELIA A. CLARK, J., joins, dissenting.

I agree with the Court's conclusion that the portion of the 1981 judgment declaring Randy L. May infamous is contrary to Tenn. Code Ann. § 40-2712 (1975) (amended 1981).[1]  However, I cannot concur with the Court's dramatic expansion of the application of the "great and efficacious"[2] writ of habeas corpus in this case.  Until today, it had been well settled that the writ did not apply to collateral consequences of a criminal conviction or to circumstances that did not involve imprisonment or a "restraint of liberty" as that concept had been understood at common law.  Rather than recognizing a brand new classification of collateral consequences in order to provide Mr. May relief, this Court should simply leave Mr. May to pursue his other, well-established plain, adequate, and speedy remedies.

**I.**

In July 1980, Randy L. May committed first degree murder and assault with intent to commit first degree murder.  On January 24, 1981, he pled guilty in the Criminal Court for Hamblen County to both offenses and was sentenced to two life sentences to be served concurrently in the custody of the Tennessee Department of Correction.  The judgment of conviction stated that Mr. May was "rendered infamous" with regard to his first degree murder conviction, even though first degree murder was not an infamous crime under Tenn. Code Ann. § 40-2712.

In November 2005, Mr. May filed a pro se petition for writ of habeas corpus in the Circuit Court for Johnson County, asserting that he was "being restrained of his liberty" as a direct result of the actions of the Criminal Court for Hamblen County.  He insisted that the judgment for first degree murder was void because it was "in direct contravention of . . . Tenn. Code Ann. § 40-2712."

---

[1]This statute, as amended, is currently codified at Tenn. Code Ann. § 40-20-112 (2006).

[2]William Blackstone, 3 Commentaries *131 (hereinafter Blackstone).

While Mr. May argued in an accompanying memorandum of law that he had "presently been denied the fundamental right of voting for over twenty-four (24) years," he did not allege that he had ever attempted to vote or even to register to vote or that he had been prevented from registering to vote or from voting because of his 1981 conviction.

The Department of Correction filed a motion to dismiss Mr. May's petition because it failed to state a colorable claim for habeas corpus relief. The Department relied, in part, on *Taylor v. State*, No. 01A01-9707-CH-00338, 1999 WL 58599, at *2 (Tenn. Ct. App. Feb. 9, 1999), *perm. app. dismissed* (Tenn. Oct. 11, 1999), in which the Tennessee Court of Appeals held that "the laws disenfranchising convicted felons are simply remedial statutes and are not laws that invoke or increase criminal penalties." On January 24, 2006, the trial court granted the Department's motion, stating that "[n]othing in the petition would support a finding . . . that [the] petitioner's conviction is void or that his sentence has expired."

On January 29, 2007, the Tennessee Court of Criminal Appeals affirmed the dismissal of Mr. May's petition. The court concluded that "an erroneous pronouncement of infamy does not strike at the jurisdictional integrity of the sentence (life imprisonment) or the conviction (first degree murder)." *May v. Carlton*, No. E2006-00308-CCA-R3-HC, 2007 WL 241025, at *1 (Tenn. Crim. App. Jan. 29, 2007). We granted Mr. May's application for permission to appeal.

## II.

The courts of England recognized several varieties of the writ of habeas corpus.[3] The purpose of the writ of *habeas corpus ad subjiciendum* was to provide a legal process by which the common-law courts could review and determine the legality of the physical detention of a person who petitioned for relief. *Preiser v. Rodriguez*, 411 U.S. at 484; Herbert Wechsler, *Habeas Corpus and the Supreme Court: Reconsidering the Reach of the Great Writ*, 59 U. Colo. L. Rev. 167, 167 (1988). It is this version of the writ of habeas corpus that is at issue in this case.

The writ of habeas corpus was brought to America by the colonists and was considered to be among the fundamental rights that had descended from their ancestors. *Ex Parte Yerger*, 75 U.S. (8 Wall.) 85, 95 (1869). Not surprisingly, the drafters of the United States Constitution decided to limit the power of Congress to suspend the "privilege of the writ of habeas corpus" in Article I, Section 9, Clause 2. This provision implicitly recognized the power of the federal courts to issue writs of habeas corpus. However, it was not until Congress enacted the Judiciary Act of 1789[4] that the courts were given the express power to issue the writ.

The incorporation of the writ of habeas corpus into the law of Tennessee followed a path that paralleled its federal counterpart. Using language virtually identical to that found in the United States Constitution, the drafters of Tennessee's Constitution of 1796 limited the power of the

---

[3]*Preiser v. Rodriguez*, 411 U.S. 475, 484-85 & n.2 (1973); *Ex Parte Bollman*, 8 U.S. (4 Cranch) 75, 84, 95, 98-99 (1807); Blackstone *129-30.

[4]Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 73, 81-82.

General Assembly to suspend the writ of habeas corpus in article XI, section 15[5] and, thereby, also implicitly recognized the power of the state courts to issue writs of habeas corpus. The General Assembly, however, did not turn its attention to the writ for the next sixty years.[6]

In 1858, the General Assembly enacted a code containing statutes defining the scope of the writ of habeas corpus that could be granted by state courts and the procedures surrounding the use of the writ.[7] These statutes, with only minor amendments, have been in force for almost one hundred and fifty years and are currently codified at Tenn. Code Ann. §§ 29-21-101 to -130 (2000). With certain exceptions not applicable to this case, Tenn. Code Ann. § 29-21-101 permits "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever" to file a petition for writ of habeas corpus "to inquire into the cause of such imprisonment and restraint."

Neither article I, section 15 of the Tennessee Constitution nor Tennessee's habeas corpus statutes define the term "habeas corpus."[8] However, the courts of Tennessee, like other courts, have ascertained its meaning and have derived the principles governing the use of the writ of habeas corpus from the Habeas Corpus Act of 1679,[9] the decisions of the English courts interpreting the Act, and the history of habeas corpus both in England and in the United States. *Jones v. Cunningham*, 371 U.S. 236, 375-76 (1963); Ex *Parte Parks*, 93 U.S. 18, 21-22 (1876); *Appendix*, 35 Tenn. at 699-726.

In its historic form, the writ of habeas corpus was a remedy against unjust detention. *Renney v. Mayfield*, 5 Tenn. (2 Hayw.) 165, 169-70 (1817). The writ put at issue only the disposition of the custody of a prisoner. It did not extend to questions that could not affect the lawfulness of the prisoner's custody or detention and that would not result in the prisoner's release. *Preiser v. Rodriguez*, 411 U.S. at 484-88 & n.7; *State v. Malone*, 35 Tenn. at 416.

During the past two centuries, the application of the writ of habeas corpus has expanded beyond the writ's seventeenth and eighteenth century boundaries. Because of the writ's flexible

---

[5]The Declaration of Rights in article XI of the Constitution of 1796 became article I in the Constitutions of 1834 and 1870. Accordingly, article XI, section 15 of the Constitution of 1796, as revised, is now article I, section 15 of the Tennessee Constitution. It currently provides that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in the case of rebellion or invasion, the General Assembly shall declare the public safety requires it."

[6]In an appendix to *State v. Malone*, 35 Tenn. (3 Sneed) 413 (1856), John T. Sneed, the Attorney General and Reporter of Tennessee, observed that "[i]n this state there is no practice upon this subject, established by statute, save certain meagre provisions which chiefly relate to the enforcement of the attendance of witnesses. . . ." *Appendix: The Writ of Habeas Corpus*, 35 Tenn. (3 Sneed) 699, 699 (1856) ("*Appendix*").

[7]Code of Tennessee §§ 3720 – 3765 (Return J. Meigs & William F. Cooper eds., E.G. Eastman & Co. 1858) ("Code of 1858").

[8]The term's literal interpretation is "that you may have the body." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 395 (2d ed. 1995).

[9]31 Car. 2, c. 2 (Eng.).

-3-

nature,[10] the courts in both the United States and England have approved the use of the writ in circumstances in which the physical restraint is something less than actual incarceration or close confinement. *See*, *e.g.*, *Jones v. Cunningham*, 371 U.S. at 238-39 (citing English cases approving the use of habeas corpus by persons who were not permitted to go where they pleased). However, the writ has not become unloosed from its historic moorings. Even the most expansive habeas corpus "precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty – that is, whether the legal disability in question somehow limits the putative habeas petitioner's movement." *Leslie v. Randle*, 296 F.3d 518, 522 (6th Cir. 2002) (quoting *Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th Cir. 1998)).[11]

Tennessee's courts, at least until today, have construed Tenn. Code Ann. § 29-21-101 in a similar fashion. Forty years ago, this Court authorized a person who was not in custody but who was forbidden to leave Maury County to use a writ of habeas corpus to test the restraint on her freedom of movement. *State ex rel. Dillehay v. White*, 217 Tenn. 524, 527-28, 398 S.W.2d 737, 738 (1966). Similarly, just two years ago, this Court approved using a writ of habeas corpus to challenge the portion of a sentence requiring a defendant to register as a sexual offender. *Moody v. State*, 160 S.W.3d 512, 515-16 (Tenn. 2005). While persons required to register as sexual offenders are not incarcerated, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 [Tenn. Code Ann. §§ 40-39-201 to -212 (2006 & Supp. 2007)] imposes extensive physical limitations on their freedom of movement.[12] Accordingly, permitting a person to use a writ of habeas corpus to challenge the portion of a judgment requiring registration as a sexual offender is entirely consistent with *State ex rel Dillehay v. White's* approval of the use of the writ of habeas corpus to test the legality of a governmental restriction on the freedom of movement.

Thus, this Court has stated repeatedly that the phrase "restrained of liberty" in Tenn. Code Ann. § 29-21-101 refers to actions by a government that impose a restraint on a person's "freedom of action or movement." *See, e.g., Summers v. State*, 212 S.W.3d 251, 257 (Tenn. 2007); *Benson*

---

[10]*Wade v. Mayo*, 334 U.S. 672, 681 (1948).

[11]*See also Quair v. Sisco*, No. 1:02-CV-5891 DFL, 2007 WL 1490571, at *3 (E.D. Cal. May 21, 2007) (stating that "no court has applied habeas corpus review in cases where the purported restraint does not limit the petitioner's geographic movement."); 1 Chester J. Antieau, *The Practice of Extraordinary Remedies: Habeas Corpus and Other Common Law Writs* § 1.08, at 18 (1987) (noting that it was sufficient at common law for habeas corpus petitioners to allege that they could not go where they pleased).

[12]Tennessee's sexual offender registration statutes limit, with the force of criminal penalties, where a sexual offender may live and work. A sexual offender cannot knowingly (1) establish a primary or secondary residence or any other living accommodation, (2) obtain sexual offender treatment or attend a sexual offender treatment program, or (3) accept employment within one thousand feet of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public. Tenn. Code Ann. § 40-39-211(a). Sexual offenders cannot knowingly reside within one thousand feet of the property line of their victims or victims' immediate families or be any closer than one hundred feet of a former victim at any time. Tenn. Code Ann. § 40-39-211(b). Nor, absent certain conditions, may a sexual offender knowingly establish his or her primary or secondary residence or any other living arrangement in a home occupied by a minor. Tenn. Code Ann. § 40-39-211(c). In addition, Tennessee's statutes impose extensive reporting requirements on sexual offenders when they move, accept employment, or become a student. Tenn. Code Ann. § 40-39-203(a)(1).

*v. State*, 153 S.W.3d 27, 31 (Tenn. 2004). We have also held unequivocally, that "when the restraint on a petitioner's liberty is merely a collateral consequence of the challenged judgment, habeas corpus is not an appropriate avenue for seeking relief." *Hickman v. State*, 153 S.W.3d 16, 23 (Tenn. 2004).[13]

# III.

The right to vote has been protected by the Constitution of Tennessee since the earliest days of statehood.[14] However, the Constitution of 1834 explicitly empowered the General Assembly to enact laws denying the right to vote to persons convicted of infamous crimes.[15] In response, the General Assembly enacted a statute depriving persons convicted of infamous crimes of their right to vote.[16] Less than one decade later, this Court characterized the right to vote as a "political right" that was not "inalienable" and that could be "forfeited for crime." *Ridley v. Sherbrook*, 43 Tenn. (3 Cold.) 569, 576 (1866). Four years after the decision in *Ridley v. Sherbrook*, the citizens of Tennessee ratified our current constitution which, like the Constitution of 1834, explicitly empowered the General Assembly to deny persons convicted of infamous crimes the right to vote.[17]

When Mr. May was convicted in 1981, declarations of infamy were controlled by Tenn. Code Ann. § 40-2712. The statute imposed various "civil disabilities,"[18] such as disenfranchisement, upon persons who were convicted of certain infamous crimes. The statute "designate[d] a particular civil

---

[13]*See also e.g.*, *Hutton v. State*, No. M2005-00585-CCA-R3-HC, 2005 WL 3487815, at *3 (Tenn. Crim. App. Dec. 16, 2005) (No Tenn. R. App. P. 11 application filed) (noting that habeas is not an appropriate avenue for seeking relief from collateral consequences and concluding that an order for monetary restitution is a collateral consequence); *Willis v. Parker*, No. W2004-02063-CCA-R3-HC, 2005 WL 1996637, at *2-3 (Tenn. Crim. App. Aug. 18, 2005) *perm. app. denied* (Tenn. Jan. 30, 2006) (rearticulating that habeas is not an appropriate route to seek relief from collateral consequences and that, as indicated in *Hickman v. State*, this includes enhancements of a sentence as a result of previous offenses that are being challenged); *Blanchard v. State*, No. W2004-01801-CCA-R3-HC, 2005 WL 1154343, at *2-3 (Tenn. Crim. App. May 13, 2005) (No Tenn. R. App. P. 11 application filed) (same); *McDonald v. State*, No. M2004-02197-CCA-R3-HC, 2005 WL 94469, at *1 (Tenn. Crim. App. Jan. 12, 2005) (No Tenn. R. App. P. 11 application filed) (stating that habeas is not an appropriate avenue for seeking relief from collateral consequences and concluding that being prevented from pursuing gainful employment as an engineer and educator constitutes a collateral consequence); *Robinson v. Bell*, No. M2003-02772-CCA-R3-HC, 2004 WL 2290485, at *4 (Tenn. Crim. App. Oct. 12, 2004) *perm. app. denied* (Tenn. Jan. 18, 2005) (see *Willis v. Parker* above); *State v. Godsey*, 165 S.W.3d 667, 673-74 (Tenn. Crim. App. 2004) (indicating that habeas is not an appropriate avenue for seeking relief from collateral consequences and that revocation of driving privileges is a collateral consequence).

[14]Tenn. Const. of 1796, art. XI, § 5, now found at Tenn. Const. art. I, § 5.

[15]Tenn. Const. of 1834, art. IV, § 2.

[16]Code of 1858 § 5226. Prior to the enactment of this statute, the General Assembly had enacted a statute that prohibited persons rendered infamous from holding public office or testifying as witnesses. Act of Dec. 9, 1829, ch. XXIII, § 71, 1829 Tenn. Pub. Acts 27, 42.

[17]Tenn. Const. art. I, § 5 and Tenn. Const. art. IV, § 2.

[18]*State v. Johnson*, 79 S.W.3d 522, 527 (Tenn. 2002); *Cole v. Campbell*, 968 S.W.2d 274, 275-77 (Tenn. 1998).

disability that occurs upon the conviction and remains in effect throughout the defendant's life unless restored by a specific statutory procedure." *Cole v. Campbell*, 968 S.W.2d at 276.

In Tennessee, a declaration of infamy is currently incidental to a felony conviction. *See* Tenn. Code Ann. § 40-20-112. A trial court has no discretion about whether to enter a judgment of infamy. *Cambria Coal Co. v. Teaster*, 179 Tenn. 472, 475, 167 S.W.2d 343, 344 (1943). Although arguably penal in intent, the declaration of infamy is not one of the arrows in the trial court's sentencing quiver, nor is it one of the prosecutor's bargaining chips in the plea bargaining process. Rather, it is a legislatively imposed consequence of being convicted of certain crimes. The trial court must declare a convicted defendant infamous separately from, irrespective of, and in addition to any sentence or sentences ordered to be served. The concomitant loss of voting rights survives the expiration of the defendant's sentence and remains in full force and effect after the defendant is no longer in custody until the defendant's civil rights are restored in accordance with Tenn. Code Ann. §§ 40-29-101 to -205 (2006). Significantly, the later restoration of voting rights has no impact on the underlying conviction.

Although this Court has yet to set forth a calculus for determining what constitutes a "collateral consequence" of a criminal conviction, the imposition of a civil disability is just that. This case makes the point because Mr. May is not attacking his conviction or his sentence. He is seeking only to remedy the collateral consequence of being rendered infamous. Restoring Mr. May's right to vote will have absolutely no effect on the validity of his convictions or the duration or conditions of his confinement.

## IV.

The pivotal question in this case is whether Mr. May has alleged a restraint on his liberty[19] that entitles him to habeas corpus relief under Tenn. Code Ann. § 29-21-101. In light of centuries of case law defining the scope of habeas corpus, the government's interference with a prisoner's right to vote is not the sort of restraint on liberty that will trigger habeas corpus relief.[20] In a recent

---

[19]Whether his 1981 judgment of conviction has actually interfered with Mr. May's right to vote is questionable. He has not alleged, nor does the record indicate, that he has ever attempted to register to vote or to vote since 1981 or that he has been prevented from doing so because of his 1981 conviction. Other courts have found that persons who have been rendered infamous but who have not attempted to vote or to register to vote have not presented a justiciable issue for the courts to decide. *Thiess v. State Admin. Bd. of Election Laws*, 387 F. Supp. 1038, 1040-41 (D. Md. 1974).

[20]The Court relies on *State v. McCraw*, 551 S.W.2d 692 (Tenn. 1977) to justify its dramatic expansion of the scope of habeas corpus relief. The Court's reliance on this case, to the extent that it remains valid, is misplaced. The *McCraw* case involves a resident of Georgia who could not register to vote in Georgia because he had been convicted of a crime in Tennessee. He decided to file a petition in Tennessee under the Post-Conviction Relief Act to challenge his Tennessee conviction. At that time, Tenn. Code Ann. § 40-3802 (1975) (repealed 1995), required persons filing post-conviction petitions to be "in custody." This Court held that for the purposes of the Post-Conviction Relief Act, the petitioner was "in custody" because of the collateral consequences of his Tennessee conviction. *State v. McCraw*, 551 S.W.2d at 694.

The *McCraw* case has little relevance here. Relief under the Post-Conviction Relief Act and relief under the habeas corpus statutes are like apples and oranges. In fact, the Post-Conviction Relief Act was passed in order to

(continued...)

decision on this very issue, the New Mexico Supreme Court, noting that the writ of habeas corpus is not a "one-stop shop for a prisoner's grievances," held that being denied the right to vote is a collateral consequence of a prisoner's conviction and that the writ of habeas corpus does not provide a vehicle for relief from a clerical error in a judgment that resulted in a prisoner being denied the right to vote. *Cummings v. State*, 168 P.3d 1080, 1086-87 (N.M. 2007).[21]

The courts are obligated to permit the use of the writ of habeas corpus only within the limits set by the General Assembly and the Constitution of Tennessee. It is generally agreed that the deprivation of the right to vote is simply a collateral consequence of a criminal conviction. *See State v. Johnson*, 79 S.W.3d 522, 527 (Tenn. 2002); *see also*, *e.g.*, *Maleng v. Cook*, 490 U.S. 488, 491-92 (1989); *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); *Lebron v. Comm'r of Corr.*, 876 A.2d 1178, 1191-93 & n.16 (Conn. 2005); *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981); Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 Vand. L. Rev. 929, 975-87 (1970). Accordingly, mindful of the principle of stare decisis and of this Court's holding in *Hickman v. State* that restraints on liberty that are collateral consequences of criminal convictions are not proper subjects for habeas corpus relief, I would affirm the decisions of both the Court of Criminal Appeals

---

[20](...continued) provide more relief than was available under the habeas corpus statutes. *Luttrell v. State*, 644 S.W.2d 408, 408-09 (Tenn. Crim. App. 1982). Thus, it does not necessarily follow that a person who is eligible for relief under the Post-Conviction Relief Act would also be eligible for habeas corpus relief. *See Hickman v. State*, 153 S.W.3d at 23 n.4. In fact, under current law, neither Mr. McCraw nor Mr. May would be eligible for relief under the Post-Conviction Procedure Act because they did not file their petitions within one year after their convictions became final. Tenn. Code Ann. § 40-30-102(a) (2006).

The pivotal issue in this case is not whether Mr. May is "in custody." He surely is. The question is whether, because of his judgment of infamy, Mr. May is "imprisoned or restrained of liberty" for the purpose of Tenn. Code Ann. § 29-21-101. In light of the centuries of case law defining the scope of habeas corpus relief, he surely is not. While the collateral consequences of a criminal conviction might suffice for the purposes of post-conviction relief, we have already squarely held that they are not sufficient to warrant habeas corpus relief unless they result in a restraint on the freedom of movement. *See Hickman v. State*, 153 S.W.3d at 23.

[21]The Court notes that the Texas courts have held that the writ of habeas corpus in Texas extends to collateral consequences of criminal convictions. These decisions, however, are of little value in Tennessee because the Texas legislature, unlike the legislatures in Tennessee and New Mexico, has defined the scope of the writ of habeas corpus much more broadly than the writ's common-law origins. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 11.21 to 11.23 (2005); *Ex Parte Snodgrass*, 65 S.W. 1061, 1062 (Tex. Crim. App. 1901) (interpreting Texas's habeas corpus statute to apply to "any character or kind of restraint that precludes an absolute and perfect freedom of action on the part of relator authorizes such relator to make application to this court for release from said restraint").

The Texas legislature has opted to expand habeas corpus relief beyond its common-law roots, and the Texas courts have appropriately honored this legislative decision. While Tennessee's legislature is certainly free to similarly broaden the scope of the application of the writ of habeas corpus, it has not yet done so. We should not take it upon ourselves to expand the scope of the writ of habeas corpus in light of the long-standing canon of statutory construction providing that courts should not interpret statutes to displace the common law in the absence of clear legislative intent to do so. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002); *Russell v. Colyar*, 51 Tenn. (4 Heisk.) 154, 159-62 (1871).

and the trial court to deny Mr. May's petition.[22]  The defect in Mr. May's judgment of conviction simply does not limit his liberty of movement in the physical sense.

In reaching this decision, I do not mean to suggest that Mr. May should be left without a remedy should his 1981 conviction actually prevent him from registering to vote or from voting.[23] The ancient maxim that there should be no wrong without a remedy[24] has application here.  In light of the State's concession that Mr. May should not have been rendered infamous based on his 1981 judgment, I would follow the example of the New Mexico Supreme Court and suggest that no further litigation should be required.  *Cummings v. State*, 168 P.3d at 1987.  I see no reason to presume that the State will not act promptly by cooperating with Mr. May should he attempt to register to vote or to vote.  However, should further litigation become necessary, Mr. May has other, more established remedies available to him.  Specifically, should Mr. May be unsuccessful in an effort to register to vote or to vote, he may file an action for declaratory judgment under Tenn. Code Ann. § 29-14-103 (2000) or a civil rights action under 42 U.S.C. § 1983.  For these reasons, I respectfully dissent.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[22]The Court's decision to expand habeas corpus jurisdiction in Tennessee relies heavily on decisions of the United States Supreme Court holding that a challenged conviction's collateral consequences may prevent a habeas corpus petition from becoming moot. *See, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234 (1968); *Jones v. Cunningham*, 371 U.S. 236 (1963).  Although the issues are often mistakenly blurred, the scope of habeas corpus jurisdiction and the mootness of a particular writ are separate and distinct questions. *Malloy v. Purvis*, 681 F.2d 736, 738 n.1 (11th Cir. 1982); *Harrison v. State of Ind.*, 597 F.2d 115, 117-18 (7th Cir. 1979).  The two questions – whether habeas corpus jurisdiction exists and whether a particular petition is moot – are analytically distinct and require different analysis. *Carafas v. LaVallee*, 391 U.S. at 237-38 (distinguishing between mootness and "in custody" jurisdiction); *Oyler v. Allenbrand*, 23 F.3d 292, 293-94 (10th Cir. 1994) (describing "in custody" jurisdiction as "a separate and distinct jurisdictional question" from mootness); *Ward v. Knoblock*, 738 F.2d 134, 138-39 (6th Cir. 1984); *Lebron v. Comm'r of Corrections*, 876 A.2d 1178, 1192-94 & n.17 (Conn. 2005); *Commw. of Pa. v. Ahlborn*, 683 A.2d 632, 638-39 (Pa. Super. Ct. 1996).  That a collateral consequence may prevent a case from becoming moot does not answer the question of whether a petition falls within the scope of habeas corpus jurisdiction.  Tennessee's statutes conferring habeas corpus jurisdiction do not confer power to entertain claims simply because they are not moot. *See Kravitz v. Commw. of Pa.*, 546 F.2d 1100, 1102 (3d Cir. 1977).

[23]Incarcerated persons who are eligible to vote may vote by absentee ballot. *Tate v. Collins*, 496 F. Supp. 205, 209-10 (W.D. Tenn. 1980).

[24]*Bob v. State*, 10 Tenn. (2 Yer.) 173, 176 (1826).